HALSEY, STUART & COMPANY, Respondent, vs. PUBLIC SERVICE COMMISSION, Appellant. [Two cases.]

*February 11—June 29, 1933.*

188

For the appellant there was a brief by the *Attorney General* and *Alvin C. Reis* of Madison, special counsel, and

oral argument by the *Attorney General, Mr. Reis,* and *Mr. Samuel Bryan,* assistant attorney general.

For the respondent there was a brief by *Quarles, Spence & Quarles* of Milwaukee and *Harold M. Wilkie* of Madison, attorneys, and *J. V. Quarles* of Milwaukee of counsel, and oral argument by *Mr. J. V. Quarles* and *Mr. Wilkie.*

The following opinion was filed May 9, 1933:

WICKHEM, J.   Defendant first contends that the circuit court was without jurisdiction in either of these cases because no application for rehearing had been made before the commission.   Sec. 189.21 of the Statutes provides for appeal to the circuit court for Dane county from any order, decision, permit, or other official act of the commission, "subject to the limitations prescribed by sections 196.41 to 196.43."   Sec. 196.42 provides that such appeal shall be taken "within sixty days after the commission has denied an application for a rehearing of any order or determination of the commission, or within sixty days after the entry or rendition of a final order following the holding of such rehearing."   Sec. 196.405 provides:

"(2) . . . No action to set aside or vacate any order, decision or determination of the commission shall lie in any court unless the plaintiff shall have made, before the effective date of such order or decision, application to the commission for a rehearing. . . ."

It is contended by the defendant that the plaintiff made no application for rehearing before the commission in either case, and that this disposes of the appeals.   We think there is no merit to this contention.   Sec. 196.405 is not included within the sections recited in sec. 189.21 as limiting the right to appeal in cases relating to security regulation.   It is contained in the chapter relating to the regulation of public utilities, and the limitation upon the right to appeal plainly relates to those cases in which it is desired to appeal from

an order by the commission to do something in the future or on or before a date fixed by the commission. The provision does not apply to a peremptory order suspending a license, effective at once, since there is no possibility of moving for rehearing before the effective date of the order. We think that sec. 196.405 does not apply to this situation or condition the appeal.

The next contention by the defendant is that the appeal from the first order operated as a stay, and that consequently the suspension order was in full force and effect at the time the application of the plaintiff was made, and that as a result the commission was entirely within its rights in demanding the application upon a blank appropriate for brokers who had no license. Sec. 274.26 is principally relied upon. This section provides:

"When the state, or any state officer, or state board, in a purely official capacity, or any town, county or municipal corporation within the state shall take an appeal to any court or tribunal, service of the notice of appeal shall perfect the appeal and stay the execution or performance of the judgment or order appealed from, and no undertaking need be given."

Sec. 274.24 provides:

"When the appeal is from an order the execution or performance thereof or obedience thereto shall not be delayed except upon compliance with such conditions as the court or the presiding judge thereof shall direct, and when so required an undertaking shall be executed on the part of the appellant, by at least two sureties, in such sum and to such effect as the court or the presiding judge thereof shall direct; such effect shall be directed in accordance with the nature of the order appealed from, corresponding to the foregoing provisions in respect to appeals from judgments, where applicable, and such provision shall be made in all cases as shall properly protect the respondent; and no appeal from an intermediate order before judgment shall stay proceedings unless the court or the presiding judge thereof shall, in his discretion, so specially order."

It is the contention of the plaintiff that sec. 274.24 governs this case and takes precedence over the provisions of sec. 274.26, and that sec. 274.26 manifestly applies only to judgments or orders which must be executed or performed, that is, to mandatory judgments or orders, and in nowise applies to prohibitory judgments or orders.

It is clear to us that sec. 274.26 applies to all orders, directed at the state or any state officer, which are mandatory in character. It is our opinion, however, that an order which is prohibitive merely is not within the scope of sec. 274.26, which expressly deals with the circumstances under which "the execution or performance of the judgment or order appealed from" should be stayed.

From the foregoing it follows that if the determination of this appeal is to depend upon the suspension being in full force and effect at the time of plaintiff's application for a renewal, judgment must be affirmed.

However, there remain to be considered several questions that are not disposed of by the procedural matters heretofore discussed. The first relates to the merits of the suspension order. It is argued by plaintiff that this order is an unwarranted exercise of arbitrary power by the commission; that it is not authorized by sec. 189.14, properly construed, and that if it is, the statute is void as denying to plaintiff due process of law. The regulations governing securities and security brokers constitute an exercise of the police power, and to the extent that they are "reasonable regulations affecting dealings in such products, for the prevention of fraud and in promotion of public health, safety, and the general welfare," they are clearly valid. *Kreutzer v. Westfahl,* 187 Wis. 463, 204 N. W. 595.

The statutory provisions are that "the commission may at any time suspend any broker's or agent's certificate if it has reason to believe, and may revoke such certificate if it finds that the general business methods of such broker or

agent are unfair or inequitable, . . . or has engaged, or is about to engage, in any fraudulent transaction. . . . The commission shall forthwith give notice of such suspension to the broker or agent. . . . No order revoking a certificate shall be made until such certificate shall have been suspended for thirty days. If during said thirty days any such holder shall serve on the commission written demand for a public hearing, such hearing shall be held within a reasonable time thereafter, and no order revoking such certificate shall be made until after the hearing. . . ." Sec. 189.14, Stats. This section must be viewed in the light of sec. 189.13, which requires persons or companies desiring to act as brokers to make application to the commission for a certificate, authorizes the commission to examine the application, to make a detailed examination into the business affairs of the applicant, and if satisfied of the good business reputation of the applicant and that its general business methods are fair, to issue the certificate of authority to act as broker. It is expressly provided in sub. (6) of this section that every certificate of authority shall expire on the 31st day of December next after the date the certificate becomes effective. The licensing of brokers is thus placed upon a yearly basis, for the purpose of enabling the commission periodically to examine the business practices of brokers and thus intelligently to pass upon the right of such brokers to continue to sell securities. In order further to protect the public from imposition, the power of suspension and of revocation is given to the commission. These powers are vested in the commission to enable it to act with sufficient speed and promptness to give to the public a protection over and above that provided for in the annual licensing provisions. This is especially true of the power of suspension. It cannot have been the legislative intent that a suspension be based upon a protracted hearing because, in view of the fact that the

licenses expire within a year, such a provision might conceivably destroy the usefulness of the provision for suspension. Nor do we think that the statute contemplates any hearing whatever so far as the suspension is concerned. By the express terms of the statute the certificate may be suspended if the commission has "reason to believe," but may only be revoked if the commission "finds" that the business methods of the broker are unfair and inequitable. The distinction between the suspension and the revocation is evident from the language of the statute just quoted. The purpose of the suspension provision is clear. It is to give to the commission the power to act at once to protect the public from imposition. This being the legislative intent, two questions immediately present themselves. The first is whether the statute, as thus construed, is unconstitutional and void as denying to plaintiff due process of law. We cannot assent to the contention that it is.

It is said that there is no provision for a hearing. It is true that there is none prior to suspension. We do not regard this as fatal to the validity of the law. Having in mind that this is an exercise of the police power, and that it is valid in so far as it is reasonably necessary and appropriate to the promotion of the public welfare, it seems to us that the act must be sustained. The court may take notice of the fact that much harm may come to the citizens of the state, and that they may be the victims of much fraud and imposition unless they are speedily protected from improper practices in the sale of securities. Having in mind modern sales methods and the speed at which the business of today is done, promptness of action on the part of the commission may be the measure of its effectiveness. While the suspension may seriously damage the business of a particular broker, this consideration is not fatal to the validity of the act, provided it is reasonably necessary to protect the public.

The rights of the public to exercise the police power in its own protection are superior to those of any individual broker to sell under his license or certificate.

Further than this, there is a provision for hearing upon the suspension order. The statute provides that the certificate holder thus suspended may, within thirty days, serve upon the commission a demand for a public hearing, which must be held within a reasonable time thereafter; and while there is no express provision terminating the period of suspension, we think it is evident from the statute that it was the legislative intent that when a hearing is demanded and had, it shall terminate either in a revocation of the license or a restoration. It is our conclusion that the statute does not deny due process. In the interest and protection of the public, provision is made for a summary suspension, followed by provisions for a speedy hearing upon the merits of the suspension order if and when demanded by the broker affected. This amounts to no more than a reasonable and valid exercise of the police power.

The next question is whether, assuming the construction that the court has put upon sec. 189.14, and further assuming its validity, the commission could legitimately have had reason to believe that the plaintiff had been guilty of business methods that were unfair or inequitable, or had engaged in a fraudulent transaction. Here again we are unable to accept as valid the contention of the plaintiff that the commission's action was arbitrary. What is contended for by plaintiff might reasonably be urged had the commission revoked the certificate upon the basis of newspaper information that plaintiff had been indicted for fraud in the sale of securities. The same conclusion does not follow with respect to a suspension order. When authentic or uncontroverted information reaches the commission that a broker has been indicted for fraudulent business practices, the commission may, without acting arbitrarily, move for the pro-

tection of the public by a suspension of the license, and such action upon the part of the commission cannot be condemned by a court as an abuse of the discretion vested in the commission by the statute. It is true that the indictment is not a conviction and that the broker is entitled to a presumption of innocence. The suspension order does not amount to a prejudgment of guilt, or a disregard of the presumption. It is a measure of precaution which may be taken on evidence which falls short of enough upon which to base a finding of guilt. It is the rule in this state that the orders and acts of the Public Service Commission are *prima facie* valid, and they must be shown to be otherwise by clear and satisfactory evidence. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *Citizens Telephone Co. v. Railroad Comm.* 157 Wis. 498, 146 N. W. 798; *Hudson v. Railroad Comm.* 192 Wis. 226, 212 N. W. 293. We conclude that no such showing is here made.

It is further contended that the order of the trial court in this case was merely an order pending trial, and thus neither final nor appealable, and, further, that they are discretionary orders and as such are not reviewable. The rule with respect to appeals from orders granting temporary injunctions is stated in *De Pauw v. Oxley,* 122 Wis. 656, 100 N. W. 1028, as follows:

"Where the complaint states a cause of action and the motion papers disclose a reasonable probability of plaintiff's ultimate success, it is well nigh an imperative duty of the court to preserve the *status quo* by temporary injunction, if its disturbance *pendente lite* will render futile in considerable degree the judgment sought, or cause serious and irreparable injury to one party; especially if injury to the other is slight, or of character easily compensable in money; and that the discretion vested in the court is largely over the question of terms of the restraint and the protection of rights by bonds from one party to the other."

See, also, *Dunn v. Acme A. & G. Co.* 168 Wis. 128, 169 N. W. 297; *Valley Iron Works Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096.

The propriety of an injunction *pendente lite* depends upon the showing of a reasonable probability of plaintiff's ultimate success, and it is at this point that plaintiff's contention fails. The basis of the suspension order is not in dispute, and as a matter of law indicates no probability of plaintiff's ultimate success in the action. Hence the order of November 21, 1932, which stays and suspends the suspension order of the commission dated October 6th, is erroneous and must be reversed. While lapse of time has perhaps made this appeal moot, its relation to the appeal from the order of December 30th is so intimate that we have felt warranted in entertaining and disposing of it.

Referring to the second appeal, the question presented must be viewed in the light of our conclusion that the suspension order was stayed in spite of the appeal by the Public Service Commission. Hence, at the time when plaintiff applied for a 1933 license, the suspension order was not in effect due to the temporary injunction. It is therefore contended by plaintiff that it had a right to make application for a new license upon a blank appropriate for a renewal license, and that the commission was without power to compel application upon a blank appropriate for new companies and not used for renewals. This contention we consider to be without merit. The statute makes no distinction between forms of application for license by companies commencing to do a security business in this state, and those who seek what plaintiff designates as a "renewal." In fact there is no such thing under the statute as a "renewal" of a license. Each license expires on the 31st of December, and a new license is issued. The commission is required to exact certain information from applicants by the terms of sec. 189.13, and is authorized to demand this information in such

detail as, in its discretion, it may deem necessary. The commission and not the statute has made a distinction between renewal applications and original applications, but this gives plaintiff no right to insist upon filing its application upon a renewal blank. The commission has a right to exact any information that it desires which is relevant to the business activities and practices of an applicant, and we see no constitutional or statutory objection· to its doing so. While the suspension order was in abeyance by reason of the injunction, the legitimate suspicions of the commission were not thereby affected, and the commission had a right to insist upon the more detailed showing called for by the blank which plaintiff was required to fill, or to conduct an examination into the business practices of the plaintiff before acting upon such application as it made. This is the only conclusion possible from the express provisions of sec. 189.13. Under that section the commission may demand such information and make such investigation as it deems appropriate and as is relevant to the purposes of the statute and the protection of the public. We see no ground upon which courts can interfere with any action which falls short of being plainly arbitrary or discriminatory.

As to the reviewable character of orders such as this, the comments heretofore made with respect to the first order are applicable here. Plaintiff failed, as a matter of law, to show a reasonable probability of ultimate success.

It follows that the temporary injunction was improvidently granted, and that the order must be reversed.

*By the Court.*—The orders appealed from are reversed, and the cause remanded with directions to dissolve the temporary injunctions.

A motion for a rehearing was denied, with $25 costs in one case, on June 29, 1933.