476 P.2d 767

The STATE RACING COMMISSION and its members, Robert M. Lee, George J. Maloof, John Augustine, Jr., Dr. L. E. Farrell and William Gallagher, and La Mesa Park Racetrack Board of Racing Stewards and its members, Richard Thomas, A. R. Barrett, and Henry Zarges, Petitioners,

v.

The Honorable John B. McMANUS, Jr., District Judge, Second Judicial District, Bernalillo County, New Mexico, and Ronnie Ellis, Respondents.

No. 9091.

Supreme Court of New Mexico.

Nov. 2, 1970.

James A. Maloney, Atty. Gen., Mark B. Thompson, III, Asst. Atty. Gen., Santa Fe, for petitioners.

McAtee, Marchiondo & Michael, Pat Chowning, Albuquerque, for respondents.

## OPINION

WATSON, Justice.

Having issued an alternative writ of prohibition, we must now decide whether to make the same permanent. Our alternative writ prohibited the respondent district judge from proceeding further in Cause No. A48680, District Court of Bernalillo County. There, the respondent, on the petition of Ronnie Ellis, a jockey, had entered an ex parte order temporarily restraining petitioners from enforcing a suspension of Ellis, required by an order of La Mesa Racetrack Board of Racing Stewards. Their order suspended Ellis for seven calendar days for careless riding.

The New Mexico Racing Commissioners are appointed by the governor with the advice and consent of the senate. Sections 60–6–2 and 60–6–2.1, N.M.S.A., 1953 Comp. The Commission may make rules and regulations governing the conduct of races, § 60–6–2, supra, and may appoint representatives to oversee the races, require observation of the rules and avoid violations. Section 60–6–7, N.M.S.A., 1953 Comp. The Commission has designated as its representatives three stewards for the supervision of each racetrack. The Board at La Mesa joins as petitioner herein.

Pursuant to their statutory authority the Commissioners have adopted rules and regulations. Rules and Regulations governing Horse Racing, filed June 9, 1969, with the State Commission of Public Records & Archives. All persons engaged in racing, their employees, and concessionaires are licensed annually. Rule 4.01, supra. Whenever the Commission or the stewards find that any person or licensee has violated the letter or spirit of the Rules of Racing, they may take disciplinary action in "the form of a fine, suspension, revocation of license, or a combination of these penalties, or the ruling off for life." Rule 24.01, supra. Any license holder aggrieved by any order of the stewards may protest and make a written request for a hearing before the Commission within ten days after issuance of the protested order. Rules 25.-01, 25.02, and 25.03, supra. He will be granted a hearing, will be given specification of the charges if requested, may appear personally or by counsel, and may receive a transcript of the record if paid for by him. Rules 25.04, 25.05, and 25.07, supra. The decision of the Commission is final. Rule 25.06, supra.

We are at once struck with the apparent failure of Ellis to exhaust the administrative remedies provided by the rules mentioned above. However, we note that the respondent did exercise jurisdiction in this case, implicit in which action is the determination by him, on the facts presented, that all jurisdictional prerequisites had been met. Thus, in order for us to find a lack of jursidiction on the ground of failure to exhaust administrative remedies, we have to review a determination by the trial court which it had power to make, and this is not a proper inquiry for this court on prohibition. We explain.

The difficulty of determining whether the jurisdictional question is one for our decision in a prohibition action or one to be determined by the district judge and only reviewed by us on appeal has been fully recognized by this court. The problem was discussed in State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo, 70 N.M. 475, 375 P.2d 118 (1962), where we said:

"The correct rule is that announced generally in Gilmore v. District Court, etc. [35 N.M. 157, 291 P. 295 (1930)], supra, and applied specifically in a workmen's compensation case in State ex rel. St. Louis, Rocky Mountain & Pacific Co. v. District Court, etc. [38 N.M. 451, 34 P.2d 1098 (1934)], supra, to the effect that jurisdiction being present of both the subject matter and the parties, ordinarily prohibition will not issue, and further that the question was not whether the court had a right to decide the issue in a particular way, but did it have the right to decide it at all." 70 N.M. at 481, 375 P.2d at 122.

.. The rule was thus stated by Justice Sadler in State ex rel. Heron v. District Court of First Jud. Dist., 46 N.M. 296, 128 P.2d 454 (1942):

> "We think it fair to say of our decisions on the question when to prohibit, in line with what has just been quoted from State ex rel. St. Louis, Rocky Mountain & Pacific Co. v. District Court of Eighth Judicial District, supra, that if, absent prohibition in the given case, the judgment therein rendered, unless reversed for error on direct review, would be binding on the parties and not subject to collateral attack as a mere nullity, then prohibition will not lie; otherwise it will." 46 N.M. at 302, 128 P.2d at 458.

See also State v. Patten, 41 N.M. 395, 69 P.2d 931 (1937), where the distinction between "jurisdiction" and "exercise of jurisdiction" is made.

If we have departed from the rules above quoted, or drawn the line too far in favor of our determination of the jurisdictional question in State ex rel. Attorney General v. Reese, 78 N.M. 241, 430 P.2d 399 (1967); State ex rel. Board of Education v. Montoya, 73 N.M. 162, 386 P.2d 252 (1963); or in State ex rel. State Corporation Comm. v. Zinn, 72 N.M. 29, 380 P.2d 182 (1963), we hereby reaffirm the rule as set forth in State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo, supra. See Peyton v. Nord, 78 N.M. 717, 437 P.2d 716 (1968).

■ Under the rules just discussed, it was the duty of the respondent to examine the facts presented upon which his jurisdiction depended, and since respondent exercised jurisdiction, he implicitly made that determination. We cannot believe that such a determination could be successfully attacked collaterally, and thus we cannot prohibit respondent, under the authorities cited above.

Our inquiry, however, does not end merely because of this determination. Petitioners earnestly contend that since this case is one involving great public interest and importance to the people of the state, we should exercise our superintending control,

through the writ of prohibition, in order to determine whether the trial court should have acted as it did. There is authority for such a course. In State ex rel. Townsend v. Court of Appeals, 78 N.M. 71, 428 P.2d 473 (1967), we said:

> " * * * Also, prohibition will lie even where there is a remedy by appeal, where it is deemed to be in the public interest to settle the question involved at the earliest moment * * *." 78 N.M. at 74, 428 P.2d at 476.

The same reasoning has been used in the cases of State ex rel. Castillo Corp. v. New Mexico State Tax Comm., 79 N.M. 357, 443 P.2d 850 (1968); State ex rel. Gomez v. Campbell, 75 N.M. 86, 400 P.2d 956 (1965); and State ex rel. West v. Thomas, 62 N.M. 103, 305 P.2d 376 (1956); all of which involved writs of mandamus which were issued solely because of the great public importance of the questions involved and which would not otherwise have properly issued. Therefore, our inquiry now becomes: Is the question here involved one of great public importance requiring the use of our power of superintending control?

In examining the circumstances we find that in 1969, 705,689 persons attended races during 190 racing days at the four state-licensed tracks. Over 35 million dollars were wagered, of which $739,404.00 was paid to the State after deducting all expenses of supervision. New Mexico State Racing Commission 1968–1969 Biennial Report, filed February 3, 1970 with the State Commission of Public Records & Archives. Respondents do not deny the public interest nor dispute the evidence submitted to us pursuant to Supreme Court Rule 24(5) [§ 21–2–1(24) (5), N.M.S.A., 1953 Comp.], of the frequency of small fines and seven-day suspensions imposed by the stewards on the State's racetracks. For example, on June 21 and 22, 1970, three 7-day suspensions, six $25.00 fines, and one $50.00 fine, all for riding violations, were imposed upon jockeys by the stewards at Ruidoso Downs. On June 22, 1970, two 7-day suspensions for

riding violations were imposed at La Mesa Park, where Ellis received a similar suspension on June 29. The Attorney General complains of the frequency of the receipt of temporary restraining orders from the courts which are entered after ex parte hearings permitting the jockey to ride. Thus he states the court, rather than the Commission acts as the umpire at the racetracks.

Although this continuing problem is one of great importance to the State in its policing of this gambling activity, taken separately the penalty involved in each case is generally so small that the probability of a case reaching us on appeal is remote. All jockeys licenses expire at the end of each year. A jockey, whose license is suspended toward the end of the season, might not be interested in either pursuing his administrative remedies or in further litigation. Thus the matter in many cases would become moot.

█ It appears that the problem is not only one of publici juris, but our refusal to entertain jurisdiction might amount to a denial of justice. For these reasons we will resort to our extraordinary writ, State ex rel. Owen v. Van Stone, 17 N.M. 41, 121 P. 611 (1912), and examine the entire matter in order to determine what result should have been reached.

█ Because the respondent district judge had already entered his order staying the suspension order of the stewards, a true writ of prohibition from this court may not be the proper remedy. We cannot prohibit that which has already been done. See State Game Commission v. Tackett, 71 N.M. 400, 379 P.2d 54 (1962). Only under our power of superintending control can we, in an original proceeding, reverse that which has been done. State ex rel. State Tax Commission v. First Judicial District Court, 69 N.M. 295, 366 P.2d 143 (1961).

The petition for injunctive relief, upon which the respondent judge's order restraining the Commission was based, recites that the horse Ellis was riding "lugged" with a horse crossing diagonally, in spite of all the efforts of petitioner to prevent it; but that the Board of Racing Stewards, upon reviewing the film of the race, decided he was guilty of careless riding and suspended him; further, that the stewards acted arbitrarily and capriciously and without authority in suspending him without a full investigation and without granting him a hearing or an opportunity to be heard. The petition states that the Rules and Regulations which allow petitioner to be suspended *prior to a hearing* are unconstitutional, and that the stewards' action was in excess of their authority. With this petition, an affidavit of Ellis's attorney was filed, which reads in part:

"That he [William C. Marchiondo] has notified the Racing Stewards at La Mesa Park that he would present this cause of action to the Court and request a restraining Order and they still refuse to allow Plaintiff a hearing. In addition, he contacted the Racing Commission of the State of New Mexico and informed them of the cause of action that he would take and requested that they rescind the Order suspending Plaintiff pending a hearing, however, they refused."

It is clear that at the time Ellis petitioned respondent judge he had not exhausted his administrative remedies since he did not make a written request for a hearing before the Commission to protest the ruling of the stewards, as required by Rule 25.03, supra.

█ Before he can apply to the courts for relief, the protestant must exhaust his administrative remedies. State ex rel. State Corporation Comm. v. Zinn, supra. There we cited Smith v. Southern Union Gas Co., 58 N.M. 197, 269 P.2d 745 (1954). In the latter case, the operator of a cafe and tourist court sought an injunction against the gas company to prevent its turning off his gas for non-payment, charging discrimination and claiming that the rate charged was from the wrong schedule. The trial court, relying upon the statute which provided for a hearing before the Public Service Commission in such cases, denied the relief sought because the plaintiff had

not exhausted his administrative remedies, and we affirmed on appeal. There, we said:

"We have held in many cases the district court gets its jurisdiction from the Constitution, and it is not to be circumscribed or restrained by the legislature. State v. McKinley, 1949, 53 N.M. 106, 202 P.2d 964; Dunham v. Stitzberg, 1948, 53 N.M. 81, 201 P.2d 1000; Guthrie v. Threlkeld Co., 1948, 52 N.M. 93, 192 P.2d 307. As will later appear, what has been done in the Public Utility Act is not a deprivation or ouster of jurisdiction of the courts, but a postponement until the commission has passed upon the complaint." 58 N.M. at 199, 269 P.2d at 747.

Smith v. Southern Union Gas Co., supra, came to us on appeal, but State ex rel. State Corporation Comm. v. Zinn, supra, was an original prohibition action here, similar to the present action. In Zinn, we said of the above quote from Smith:

" * * * Applying this pronouncement in the instant case, the conclusion is inescapable that so long as relator was proceeding under its statutory authority and administrative remedies had not been exhausted, the district court was without jurisdiction to entertain the proceedings, and accordingly was subject to prohibition by this court." 72 N.M. at 36, 380 P.2d at 186.

Respondent, however, claims that Ellis was not required to exhaust the available administrative remedies because they were unconstitutional in allowing a jockey to be suspended *prior* to the administrative hearing. We examine this contention.

In Floeck v. Bureau of Revenue, 44 N.M. 194, 100 P.2d 225 (1940), we held that cancellation of a liquor license without *prior* notice and hearing was not unconstitutional. The license granted the jockey here is a privilege similar to that granted to owners and trainers; it is not a vested right within the meaning of the due process clause of the state and federal constitutions. Sanderson v. New Mexico State Racing Commission, 80 N.M. 200, 453 P.2d 370

(1969). Nevertheless, as a citizen, respondent Ellis has a right to engage in his chosen profession and is entitled to due process of law if he is to be lawfully denied an opportunity to do so. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed. 2d 796 (1957). See also State Bd. of Medical Examiners v. Weiner, 68 N.J.Super. 468, 172 A.2d 661 (1961). We believe the statutes and regulations above set forth provide constitutionally adequate due process of law. Ellis simply did not choose to avail himself of the remedy provided.

The courts of other states have held that due process does not require a hearing *prior* to a suspension in similar cases. In discussing the requirement of the suspension of a security broker's license prior to hearing, the Supreme Court of Wisconsin, in Halsey, Stuart & Co. v. Public Service Commission, 212 Wis. 184, 248 N.W. 458 (1933), said:

"It is said that there is no provision for a hearing. It is true that there is none prior to suspension. We do not regard this as fatal to the validity of the law. Having in mind that this is an exercise of the police power, and that it is valid in so far as it is reasonably necessary and appropriate to the promotion of the public welfare, it seems to us that the act must be sustained. * * * The rights of the public to exercise the police power in its own protection are superior to those of any individual broker to sell under his license or certificate.

"Further than this, there is a provision for hearing upon the suspension order. The statute provides that the certificate holder thus suspended may, within thirty days, serve upon the commission a demand for a public hearing, which must be held within a reasonable time thereafter * * *. It is our conclusion that the statute does not deny due process. In the interest and protection of the public, provision is made for a summary suspension, followed by provisions for a speedy hearing upon the merits of the

suspension order if and when demanded by the broker affected. This amounts to no more than a reasonable and valid exercise of the police power." 248 N.W. at 461.

We agree with the reasoning of the Wisconsin court and apply it to the case before us, although, as petitioners point out, the seven day suspension here might be more comparable to the ruling of an umpire or a referee. Thus, where there was no showing of bad faith or abuse of discretion on the part of the stewards or the Commission, if the matter were before us for review, we could only conclude that the trial court erred in staying the temporary suspension. In the original proceeding here, using our power of supervisory control, we determine that respondent district judge had no jurisdiction in the matter because of the failure of the jockey, Ellis, to first exhaust his administrative remedies.

Our alternative writ of prohibition is, therefore, made permanent, and, in addition, respondent's temporary restraining order entered on July 2, 1970, is declared void.

It is so ordered.

COMPTON, C. J., and TACKETT, SISK and McKENNA, JJ., concur.