881 P.2d 1387 (1994)
118 N.M. 402
DISTRICT COURT OF the SECOND JUDICIAL DISTRICT, Petitioner,
v.
Patricia E. McKENNA, Respondent.
No. 21881.
Supreme Court of New Mexico.
September 21, 1994.
*1389 Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Charles Daniels, Albuquerque, for petitioner.
Patricia E. McKenna, pro se.
Bridget U. Lotze, Taos, Barbara L. Shapiro, Albuquerque, for amicus curiae Family Law Section Bd.
Robert M. Schwartz, Dist. Atty., Steven S. Suttle, Asst. Chief Deputy Dist. Atty., Albuquerque, for amicus curiae Dist. Attys' Ass'n.
Tom Udall, Atty. Gen., Mary Catherine McCulloch, Asst. Atty. Gen., Santa Fe, for amicus curiae Office of the Atty. Gen.
Ray Twohig, P.C., Ray Twohig, Albuquerque, for amicus curiae New Mexico Criminal Defense Lawyer's Ass'n.
Maureen A. Sanders, William Carpenter, Tracy McGee, Albuquerque, for amicus curiae N.M. Trial Lawyers Ass'n and N.M. Defense Lawyers Ass'n.

OPINION
RANSOM, Justice.
The Second Judicial District Court petitioned this Court for a writ of superintending control, asking generally for guidance and assistance in controlling and regulating the proper exercise of special grand jury petitions allowed by the New Mexico Constitution. See N.M. Const. art. II, § 14 (providing that two hundred registered voters may petition the district court to convene a grand jury). The District Court also asks that we specifically decide the legality of the grand jury petition in question. At issue is our holding in Cook v. Smith, 114 N.M. 41, 45, *1390 834 P.2d 418, 422 (1992), in which we stated that a district court has a "residuum of supervisory authority over the convening of [a] grand jury" and that "the district court must make ... a determination of the legality of the proposed grand jury inquisition." We assume jurisdiction of this case pursuant to Article VI, Section 3 of the New Mexico Constitution and articulate some further standards for determining whether a public-initiated grand jury petition is valid. We determine that the petition in question is invalid.
Facts and proceedings. On December 20, 1993, Patricia E. McKenna filed a petition in the Second Judicial District Court seeking to convene a grand jury. In its entirety the petition reads as follows:
COMES NOW Patricia E. McKenna and hereby submits the Petition of over two hundred voters in Bernalillo County to empanel a grand jury with a Special Prosecutor to investigate and, if appropriate, to indict, Second Judicial District Judge Anne M. Kass and any other judge and/or officer of the Court, those persons in the Office of the District Attorney, the Department of Human Services, and any person or other public or private agency that have engaged in acts of misconduct or abuses of authority resulting in the perpetuation of child abuse, extortion, violations of civil rights, and other wrongdoing or violations of law.
The Bernalillo County Clerk verified that the petition contained the requisite number of voters' signatures. Thereafter, because the petition named one judge of the District Court explicitly and named all of its judges and court employees implicitly, the judges determined that they should recuse themselves as a matter of judicial ethics. The District Court notified this Court of the recusals and filed the petition for a writ of superintending control.
Court's authority under superintending control. The New Mexico Constitution grants this Court "superintending control over all inferior courts." N.M. Const. art. VI, § 3. "The power of superintending control is the power to control the course of ordinary litigation in inferior courts...." State v. Roy, 40 N.M. 397, 421, 60 P.2d 646, 661 (1936). Inherent within that power is the authority to regulate pleading, practice, and procedure in the district courts. Id. at 422, 60 P.2d at 660. We exercise this authority by promulgating rules that regulate pleading, practice, and procedure, see Ammerman v. Hubbard Broadcasting, Inc., 89 N.M. 307, 310, 551 P.2d 1354, 1357 (1976), cert. denied, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978); by issuing opinions or decisions, see Alexander v. Delgado, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973); by issuing administrative orders, see Russillo v. Scarborough, 935 F.2d 1167, 1173 (10th Cir.1991); and by issuing extraordinary writs, see Roy, 40 N.M. at 422, 60 P.2d at 661.
Although our jurisdiction under superintending control seemingly is boundless, see Roy, 40 N.M. at 422, 60 P.2d at 662, we have stated previously that we will exercise that jurisdiction through the use of writs in exceptional circumstances only, see State ex rel. Transcontinental Bus Serv., Inc. v. Carmody, 53 N.M. 367, 378, 208 P.2d 1073, 1080 (1949). In Carmody we said that "this [C]ourt may intervene by an appropriate writ in an exercise of its power of superintending control, if the remedy by appeal seems wholly inadequate ... or where otherwise necessary to prevent irreparable mischief, great, extraordinary, or exceptional hardship[, or] costly delays and unusual burdens of expense." Id. (citation omitted).
Using these standards, this Court has used its power of superintending control to address issues "of great public interest and importance," State Racing Comm'n v. McManus, 82 N.M. 108, 110, 476 P.2d 767, 769 (1970), in which "our refusal to entertain jurisdiction might amount to a denial of justice," id. at 111, 476 P.2d at 770. We also have used this authority when it was the only means available "to maintain the integrity of our court system and the respect in which it is held." State ex rel. Anaya v. Scarborough, 75 N.M. 702, 712-13, 410 P.2d 732, 739 *1391 (1966). We will not, however, use our power of superintending control simply because the parties expect the matter to be appealed eventually. See State ex rel. Oil Conservation Comm'n v. Brand, 65 N.M. 384, 388-89, 338 P.2d 113, 116 (1959). "The [power of] superintending control will not be invoked merely to perform the office of an appeal." State Game Comm'n v. Tackett, 71 N.M. 400, 404, 379 P.2d 54, 57 (1962).
McKenna challenges the exercise of superintending control in this case on several grounds. First, she argues in essence that because she is not a judge or a member of the judiciary this Court cannot use its superintending authority to issue a writ to her. In acting, however, this Court is not issuing a writ to McKenna; we are taking control of the course of the litigation in this case. By issuing the writ of superintending control, we are informing the recused judges of the District Court that we deem this case to be sufficiently important that we are deciding it directly rather than designating a judge of another district court.
McKenna also contends that the District Court's petition for a writ of superintending control is premature and deficient because the District Court has not shown how it would be harmed if another district court actually ruled on the petition to convene a grand jury. We agree with McKenna that "[a]nticipation of a ruling, the execution of which might be damaging," is not alone sufficient grounds to invoke our supervisory authority. We believe, however, that allegations of judicial misconduct and abuse raise matters of significant public interest. Further, as we determined in State ex rel. Anaya, this Court has a strong interest in preserving the integrity of the judicial system and in ensuring that "traditional respect and high regard in which courts generally are held will in no way be encroached upon." 75 N.M. at 710, 410 P.2d at 737.
Finally, the District Court argues that superintending control is proper in this case because McKenna's petition is vague and overly broad. McKenna responds that a more specific petition should not be required because, once empaneled, the grand jury's inquiry is not limited to the allegations in a petition. McKenna bases her contention on State ex rel. Deschamps v. Kase, 114 N.M. 38, 39, 834 P.2d 415, 416 (1992), in which this Court held that a judge must charge the grand jury with the duty of investigating any public offense. McKenna's argument fails for two reasons. First, our decision in Deschamps was based on our interpretation of NMSA 1978, Section 31-6-9 (Repl. Pamp.1984). The legislature has since amended Section 31-6-9, see 1993 N.M.Laws, ch. 71, § 1, and the mandatory language requiring the district judge to allow the grand jury to inquire into any public offense has been deleted. Under the amended statute the district court may limit the grand jury's investigation to those specific incidents identified in the petition. See NMSA 1978, 31-6-9 (Cum.Supp.1994) ("The district court judge convening a grand jury shall charge it with duties and direct it as to any special inquiry into violations of law that he wishes it to make.").
Second, a grand jury's inquiry always has been limited. In Deschamps, 114 N.M. at 39, 834 P.2d at 416, and in Cook v. Smith, 114 N.M. 41, 45, 834 P.2d 418, 422 (1992), this Court stated that the grand jury is not allowed to engage in a "fishing expedition." "[T]he common law does not endow a grand jury with an unlimited charter to forage for unlawful conduct on speculative whim." Cook, 114 N.M. at 45, 834 P.2d at 422. Accordingly, as explained in further detail below, the petition to convene a grand jury must contain sufficient information to enable the court to determine whether the petitioners seek a legitimate inquiry into alleged criminal conduct or malfeasance of a public official or whether the petitioners seek nothing more than a witch hunt.
Sufficiency of grand jury petitions. We continue to respect the sanctity of the public's constitutional right to petition the courts to convene a grand jury. See Cook, *1392 114 N.M. at 43, 834 P.2d at 420. We will not limit the ability of individual citizens to seek legitimate redress for the criminal wrongdoing or malfeasance of public officials, because this would offend the balance struck by our constitution between the government and the people. We also continue to believe that, in seeking such redress, the petition to convene a grand jury "need not articulate specific allegations of crime," but need only "delimit an area of inquiry that colorably lies within the permissible scope of grand jury inquiry." Id. at 45, 834 P.2d at 422. To require petitioners to specify factual support for each element of the alleged crime would be overly burdensome on the right to petition the courts to convene a grand jury.
In addition to the concepts set out in Cook, we also believe that a petition to convene a grand jury need not name persons specifically, because grand juries investigate crimes or acts of malfeasance, not people. See Hendricks v. United States, 223 U.S. 178, 184, 32 S.Ct. 313, 316, 56 L.Ed. 394 (1912) (stating that identity of offender normally is developed by the grand jury); see also Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919) ("[E]xamination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual."). Instead, the petition is valid so long as the grand jury is able to discern potential targets.
Under the common law, however, there are several factors that will remove a petition from a grand jury's "area of inquiry." If the alleged conduct took place outside the geographic boundaries of the grand jury's jurisdiction, the grand jury does not have the authority to determine if such conduct justifies indictment or removal. Cook, 114 N.M. at 45, 834 P.2d at 422. Further, if the applicable statute of limitations has run, the person who is the subject of the inquiry cannot be convicted for the alleged conduct and thus the grand jury cannot issue an indictment. Id. Finally, if the petition alleges conduct that is not proscribed by New Mexico law, inquiry into such conduct historically falls outside the purview of the grand jury. See id. (stating that grand juries may inquire only into public offenses; "that is, criminal conduct or malfeasance proscribed by state law"); see also NMSA 1978, § 31-6-6(A)(1) (Repl.Pamp.1984) (setting out oath to grand jurors; stating that jurors must "diligently inquire" into public offenses).[1] The grand jury petition is not the proper vehicle for those who simply disagree with the actions of public officials who have exercised the duties and responsibilities of their office. For a district court to determine the legality of the proposed grand jury inquiry, the petition necessarily must allege facts that would identify for a grand jury just what criminal conduct or malfeasance plausibly has been committed.
Application of the standard. District court judges must examine the petition to determine whether "on its face" [it] delimit[s] an area of inquiry that colorably lies within the permissible scope of grand jury inquiry." See Cook, 114 N.M. at 45, 834 P.2d at 422 (emphasis added). If geographical jurisdiction exists, if the applicable statute of limitations has not run, and if the petition sets forth facts upon which a grand jury could determine just what criminal conduct or malfeasance colorably has been committed, then the petition is facially valid.
This, however, may not be the end of the inquiry. As part of its "residuum of supervisory authority," id., the reviewing court may consider matters beyond the face of the petition if necessary to determine the petition's legal validity. In such a review, the judge is not to decide whether the allegations in the petition demonstrate probable *1393 cause that a crime or act of malfeasance has been committed; that determination is to be made by the grand jury, see Buzbee v. Donnelly, 96 N.M. 692, 696, 634 P.2d 1244, 1248 (1981). Further, the judge is not to inquire into the motives behind the filing of the petition. See State ex rel. Harris v. Harris, 541 P.2d 171, 173 (Okla.1975) (stating that the court may not impugn the motive of the petitioners because such "is the function of the grand jury"). Although the named petitioner may have ulterior motives in filing the petition, it would be nearly impossible to determine that every one of the signatories had the same improper motive. This is not to say that a petition may not be denied because it is being used purely for political harassment or because the pervasive motive for bringing the petition is otherwise inappropriate; but, if the petition does allege the requisite facts, impliedly there is a legitimate basis for the petition independent of any illegitimate political motives.
A hearing may be appropriate but is not required. In the briefs, both the parties and the amici request that we mandate an evidentiary hearing before ruling on the validity of a petition. In some cases a hearing might be appropriate, particularly when there is evidence that the grand jury would not have jurisdiction to conduct the inquiry. A district court may use its discretion and hold an evidentiary hearing prior to convening the grand jury or denying the petition. The purpose of such a hearing could be the resolution of ambiguity or an assurance that there is evidence to make plausible the allegations of criminal conduct or malfeasancethe question being whether the inquiry is legitimate. We again caution the district court that if a hearing is held, it is not within the province of the court to determine whether the allegations in the petition demonstrate probable cause that a crime or act of malfeasance has been committed or whether the named petitioner has improper motives in bringing the petition.
Application of the standard to this case. Because the record contains both the petition and a full enumeration of the facts surrounding the petition, we exercise our power of superintending control to review the validity of McKenna's petition. Examining the petition on its face, we do not believe that it alleges sufficient facts to allow a grand jury to determine that the judges of the District Court may have committed some crime or some act of malfeasance. The petition itself alleges only that the judges, along with several other officers or employees of the court and government agencies, committed some unspecified acts "resulting in the perpetuation of child abuse, extortion, violations of civil rights, and other wrongdoing or violations of law." The petition provides no detail whatever of alleged acts of misconduct or abuses of authority that might constitute a crime. At most, the petition alleges that the named defendants "have engaged in acts of misconduct or abuses of authority." Without minimal detail of acts of misconduct or abuse of authority, we cannot say that on its face the petition "delimits an area of inquiry that colorably lies within the permissible scope of grand jury inquiry."
In her brief on the validity and sufficiency of the grand jury petition, McKenna asserts that the petition could have included several other "allegations of criminal offenses... regarding widespread corruption in Bernalillo County." We cannot find, however, any factual detail whatever for the over forty allegations made in the brief. Key to our decision in Cook was that the petition there requested investigation into highly publicized acts of malfeasance of public officers. See 114 N.M. at 46, 834 P.2d at 422. Because neither McKenna's petition nor brief contains factual allegations from which a grand jury might determine that a crime or act of malfeasance might have been committed, we must conclude that this petition calls for a fishing expedition (or worse, a witch hunt). Because of the importance of the integrity and respectability of our judicial system, we cannot allow such an expedition.
This case provides a perfect example of why the court reviewing a petition should *1394 not look into the motives of the named petitioner. Many of the briefs refer to McKenna and her supporters as "disgruntled domestic relations litigants." This descriptive phrase is used in reference to an unsupported statement that the motive behind McKenna's petition is to harass the judges of the District Court because of controversial rulings. While we do not doubt that many of the signatories to the petition are in fact individuals who are not pleased with the outcomes of their domestic relations cases, we cannot find evidence (and none was provided) that all of the signatories fall into that category. There is a danger that a judge may be convinced to deny erroneously a petition because some of the petitioners are improperly motivated. Such action would be a deprivation of the right to petition for a grand jury.
McKenna may not amend the petition without securing the requisite number of signatures. As a final argument, McKenna contends that she should be able to amend and refile the petition, and for analogous support she cites Okla.Stat.Ann. Title 38, Section 102 (West 1990). Under Oklahoma law, however, a petition to convene a grand jury must be filed with the district court for a determination of validity "prior to the obtaining of any signatures upon such petition." Okla.Stat.Ann. tit. 38, § 101 (West 1990) (emphasis added). Within four days of filing, the district court must enter an order stating whether the petition is facially valid. Id. § 102. If the court determines that the petition is invalid, it quashes the petition and the petitioners have two days to amend the petition to comply to the judge's order. Id. Thus, under Oklahoma law, before a petition may even be circulated for signature it must be determined to be valid. As in New Mexico, there is no provision in Oklahoma law for amendment of a petition after it has been circulated and signed.
In this state the threshold inquiry into the validity of petition to convene a grand jury is quite minimal. Because of the general nature of our minimal requirements, we believe it necessary that petitioners not be allowed merely to amend and refile a petition. Even the slightest amendment may amount to the addition of new allegations of crime with which the original signatories would not agree. Therefore, if a judge determines that a petition is invalid, that petition may not be amended and refiled without first securing the required number of signatures.
Conclusion. We grant the petition filed by the Second Judicial District Court and exercise our power of superintending control in this case. We hold that McKenna's petition to convene a grand jury is not valid as a matter of law because it does not state sufficient facts to allow a grand jury to determine just what crime or act of malfeasance plausibly has been committed. McKenna's petition, therefore, is denied, as is her motion to impose sanctions.
IT IS SO ORDERED.
MONTGOMERY, C.J., and BACA, FRANCHINI and FROST, JJ., concur.
NOTES
[1] The judge reviewing the petition should consider that the alleged conduct may be protected under judicial immunity if the subject of the inquiry is a member of the judiciary. See Collins ex rel. Collins v. Tabet, 111 N.M. 391, 396, 806 P.2d 40, 45 (1991) (describing judicial immunity). In doing so, however, the reviewing judge should also recognize that judicial immunity does not relieve a person from the consequences of criminal conduct. See N.M. Const. art. IV, § 36.