This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOHN STINEBAUGH,**

Petitioner-Appellant,

v.                                                                          NO.   32,840

**NEW MEXICO RACING COMMISSION,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Judge**

Peifer, Hanson & Mullins, P.A.
Robert E. Hanson
Matthew Jackson
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Tania Maestas, Assistant Attorney General
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

{1} This case centers on two issues. First, the effect of the New Mexico Racing Commission's (the Commission) failure to follow its own regulations regarding timely issuance of the hearing officer's decision and, second, whether the Commission complied with the Open Meetings Act. We reverse and remand for dismissal of the charges.

## I.    BACKGROUND

{2} John Stinebaugh is the trainer for a horse named "Dooley Dash" that raced and won at Sunland Park on February 25, 2011. As required of trainers, Stinebaugh accompanied his horse to the test barn after the race. The state veterinarian, Dr. Stephen England, took a "split" blood sample from the horse for drug testing. One half of the sample taken was sent to the state's lab for official testing, and the other half was stored in case the trainer requested further testing by a different lab. The Commission's half went to the Iowa State University Racing Chemistry Laboratory (the Iowa Lab), with whom the Racing Commission contracted to do their drug testing. The horse's lab results came back suspect and, after further testing, the Iowa Lab detected the presence of Clenbuterol, a regulated drug, in prohibited quantities. Stinebaugh sent the other half of the split sample to the Texas Veterinary Medical Diagnostic Laboratory for independent testing. That lab also found Clenbuterol in the

sample, also in an amount in excess of the threshold amount permitted by the Commission.

**{3}**     On July 2, 2011, the Ruidoso Downs Board of Stewards (the Board) held a hearing, during which the Board determined that, based on the test results, there had been a violation of the Racing Commission Rules.  After considering the results from both labs, as well as the applicable rules, the Board assessed a penalty of a seven-day license suspension, a $500 fine, and a loss of purse.  Stinebaugh appealed the Board's determination to the Commission.  The Commission appointed a hearing officer, who presided over a hearing on September 30, 2011.

**{4}**     The hearing officer issued her findings of fact, conclusions of law, and recommendations on December 30, 2011.  The Commission subsequently adopted the hearing officer's recommendations, amended the ruling of the Board, and issued its decision on February 2, 2012.  Stinebaugh's petition to the district court for writ of certiorari to review the Commission's decision was granted, and the district court affirmed the Commission's decision on March 26, 2013.  The case came before this Court for a writ of certiorari, which we granted.

**II.     DISCUSSION**

**A.     Standard of Review**

**{5}**     In reviewing administrative decisions, this Court applies the same standard of review as the district court acting in its appellate capacity.  *Lantz v. Santa Fe*

3

*Extraterritorial Zoning Auth.*, 2004-NMCA-090, ¶ 5, 136 N.M. 74, 94 P.3d 817. A reviewing court may reverse an administrative decision if it determines that the administrative entity acted fraudulently, arbitrarily or capriciously if the decision was not supported by substantial evidence in the whole record, or if the entity did not act in accordance with law. NMRA 1-075(R) (stating the standard of review for district court review of an administrative decision). *New Mexico Atty. Gen v. New Mexico Public Regulation Com'n.*, 2013-NMSC-042, ¶10, 309 P.3d 89. Whether an agency decision is or is not in accordance with law is a question of law we review de novo. *Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 5, 140 NM 198, 141 P. 3d 542.

**B.      Failure to Follow Procedure**

{6}      The Commission is an administrative agency given its authority to act by NMSA 1978, Section 60-1A-1 (2007). *See, e.g.*, *Pub. Serv. Co. of N.M. v. N.M. Envtl. Improvement Bd.*, 1976-NMCA-039, ¶ 7, 89 N.M. 223, 549 P.2d 638 (stating that administrative agencies "can act only as to those matters which are within the scope of the authority delegated to them"). Among its enumerated powers is the adoption of "rules to implement the Horse Racing Act and to ensure that horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practices." NMSA 1978, Section 60-1A-5(A) (2013). The Commission is required to act in accordance with its own regulations. *See Narvaez v. N.M. Dep't of Workforce Solutions*, 2013-NMCA-079, ¶ 15, 306 P.3d 513 ("An administrative

4

agency is bound by its own regulations."), *cert. denied*, 2013-NMCERT-006, 304 P.3d. 425; *N.M. State Racing Comm'n v. Yoakum*, 1991-NMCA-153, ¶ 17, 113 N.M. 561, 829 P.2d 7 (voiding a trainer's suspension for positive lab test where the Commission's own rule was not followed). New Mexico courts have a "duty to enforce an agency regulation when compliance with the regulation is mandated by . . . law." *State v. Gardner*, 1980-NMCA-122, ¶ 9, 95 N.M. 171, 619 P.2d 847.

{7}    In this case, the Commission, as the administrative agency, did not act in accordance with its own rules.  It conceded that the hearing officer did not issue her decision in accordance with the time limitations specified in the administrative code. We must determine the effect of this violation on the Commission's decision.

{8}    The New Mexico Supreme Court has determined that although a license to own and train race horses is a privilege, and not a vested right to which the due process clauses of the state and federal constitutions necessarily attach, *Sanderson v. N.M. Racing Comm'n*, 1969-NMSC-031, ¶ 7, 80 N.M. 200, 453 P.2d 370, a horse's jockey, owner, or trainer "has a right to engage in his chosen profession and is entitled to due process of law if he is to be lawfully denied an opportunity to do so." *State Racing Comm'n v. McManus*, 1970-NMSC-134, ¶ 19, 82 N.M. 108, 476 P.2d 767; *see State ex rel. Hughes v. City of Albuquerque*, 1991-NMCA-138, ¶ 3, 113 N.M. 209, 824 P.2d 349. Stinebaugh alleges from the failure of the Commission to abide by its rules; we discuss this claim below.

5

**{9}** The New Mexico Administrative Code Section, 15.2.1.9(C)(15)(a) NMAC (12/01/10), states that "[w]here a hearing officer conducts a hearing, the hearing officer *shall, within [thirty] days of the hearing prepare a report containing his or her findings of fact, conclusions of law[,] and recommendations for commission action*" (emphasis added). Interpretation of the administrative code employs the same rules as those used in statutory interpretation. *Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶ 18, 143 N.M. 133, 173 P.3d 55. "Legislative intent is . . . determined primarily by the language of the statute, and words will be given their plain and ordinary meaning unless a different intent is clearly indicated." *State v. Lujan*, 1985-NMCA-111, ¶ 12, 103 N.M. 667, 712 P.2d 13. When no contrary intent or ambiguity exist, "no other means of interpretation should be resorted to and there is no room for construction." *Id*.

**{10}** The matter came before the hearing officer on September 30, 2011, yet findings of fact, conclusions of law, and recommendations of the hearing officer were not issued until December 30, 2011. This ninety-one day period is three times the allotted time period for issuing a decision. The Commission, while acknowledging that the hearing officer failed to adhere to the rule, argues that such failure should have no effect because Stinebaugh suffered no prejudice. The true issue lies with whether the failure to issue a timely decision prevents the Commission from acting at all.

6

{11} Stinebaugh argues that the Commission's failure to dismiss after the hearing officer's untimely filing was jurisdictional. The Commission asserts that the rule requiring the hearing officer's report within thirty days is not a jurisdictional defect and that the Commission properly exercised its authority when it disciplined Stinebaugh. In making these arguments, both parties rely on *New Mexico Department of Health v. Compton*, 2000-NMCA-078, 129 N.M. 474, 10 P.3d 153. We do not believe that the Supreme Court intended for the narrow holding in *Compton* to have the broader effect of relieving administrative agencies of the duty to follow their own regulations and overruling our current case law on that subject. Accordingly, we turn to more relevant case law to determine whether an agency's failure to issue a recommendation or decision within the mandatory time period is a fatal defect.

{12} We need not decide whether the untimely decision resulted in a jurisdictional defect because our case law is clear that an agency's failure to comply with its own regulations in rendering a decision is a basis for voiding that decision. *See Yoakum*, 1991-NMCA-153, ¶¶ 17, 17 n.2 (holding that the Racing Commission's failure to follow its own rules in its license suspension process involving a horse trainer voided its subsequent actions against the trainer, and concluding that the failure of an agency to follow its own procedures does not require disposition on constitutional grounds. The court in *Yoakum* did not discuss whether this delay in the process prejudiced the trainer or whether a showing of such prejudice was necessary prior to voiding the

7

Commission's decision. The Commission argues that the delay in the completion of the hearing officer's report does not operate to void Stinebaugh's subsequent suspension because Stinebaugh was not prejudiced by the delay. We disagree. Regardless of whether Stinebaugh was prejudiced by the delay, we reverse the Commission's decision on the basis that it was not arrived at "in accordance with law" because it resulted from the hearing officer's untimely report, contrary to the Commission's regulations. *See* Rule 1-075(R)(4) (providing for reversal of agency decisions not made "in accordance with law"). To hold otherwise would be to allow agencies to arbitrarily delay their proceedings, contrary to the requirements in the regulations allowing for prompt disposition of license suspension proceedings. *See* 15.2.1.9 NMAC (providing specific time frames for every step of the disciplinary process; *see also Navarez,* 2013-NMCA-079, ¶¶ 13, 15 (recognizing that the "Unemployment Compensation Law and regulations emphasize the prompt handling of claims" and that "[a]n administrative agency is bound by its own regulations" because if the agency could fail to follow its time frames, "a claim could continue indefinitely without being resolved").

{13}     The agency in *Foster v. Bd. of Dentistry*, 1986-NMSC-009, ¶ 8, 103 N.M. 776, 714 P.2d 580, presented the Court with arguments similar to those the Commission argues now, namely, that the delay caused by the untimely filing was not prejudicial and that the time limit imposed is procedural and not jurisdictional. The Supreme

Court relied on its obligation to give the words of the statute their "plain and ordinary meaning," in deciding that there was "no room for construing" the time limitation to allow any more time than expressly stated. 1986-NMSC-009, ¶¶ 7-8 (internal quotation marks and citation omitted). The Court therefore determined that the decision was "void and must be reversed." *Id.*, ¶ 8. The Court later elaborated in *Lopez v. N.M. Bd. of Med. Exam'rs*, 1988-NMSC-039, 107 N.M. 145, 754 P.2d 522, that *Foster*'s express rejection of the agency's arguments constituted a clear intent to make the statutorily imposed time limit jurisdictional. 1988-NMSC-039, ¶¶ 7-8. Here, because the Board failed to take action within the required thirty-day period, its decision is void and must be reversed. To rule otherwise would be to ignore the plain language of the New Mexico Administrative Code Section 15.2.1.9(C)(15)(a) NMAC, that states, "[w]here a hearing officer conducts a hearing, the hearing officer shall, within [thirty] days of the hearing prepare a report containing his or her findings of fact, conclusions of law and recommendations for commission action."

{14} By adopting the hearing officer's decision, the Commission disregarded the extensive delay that occurred, despite Stinebaugh's attempt to bring this issue to the Commission's attention. The Commission's decision altered the winner of the race, redistributed prize money, and only then sanctioned the single trainer. However, the decision and order of the Commission alters the hearing officer's report, stating that "the Commission finds that based upon the untimely submission of the hearing

9

officer's report, there were mitigating circumstances in this matter" and "based upon a finding of mitigating circumstances due to a procedural deficiency with this matter, . . . Stinebaugh's penalty shall be amended." Thus, rather than assigning a penalty of a $1,500 fine, a sixty-day suspension, and loss of purse, based on the rule and the hearing officer's recommendations, *see* 15.2.6.9(B)(3) NMAC (12/01/2010) (recommending, absent mitigating circumstances, sixty days to six months suspension, up to a $1,500 fine, and loss of purse in the presence of a Class 3 drug), the Commission considered and amended the penalty to result in a $500 fine, loss of purse, and a fifteen-day suspension.

{15}    The Commission's attempts to validate the hearing officer's report, by use of "mitigating circumstances" rooted in the procedural deficiency of her late report is ineffective in curing the result of the Commission's failure to follow its own procedures, and constitutes an ultra vires act of mitigation. By mitigating the sanction because of its own failure to follow mandatory procedures, the Commission unilaterally compromised the integrity of its decision on the merits of this case as well as its reliability as a governing body. Unfortunately for the Commission, a subsequent act of mitigation based not on the merits of the case, but in apparent compensation for its own error cannot be sustained. *Miller*, 1976-NMSC-052, ¶ 20. ("If a . . . body is going to attempt to participate in the decision-making process as both petitioner and judge, the very least that can be expected is that it will play the game according to its

10

own rules."). As such, we reverse the Commission's decision as an error of law, and remand for dismissal of the charges against Stinebaugh. Because the issue of the Commission's failure to follow the regulations in this case warrants reversal, it is dispositive, and the open meetings issue requires no further attention.

## III. CONCLUSION

{16} We reverse Stinebaugh's suspension and remand the case to the district court to order the Commission to dismiss these proceedings against Stinebaugh.

{17} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**M. MONICA ZAMORA, Judge**

11