No. 118,410

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the PETITION TO SUMMON A GRAND JURY Filed by STEVEN DAVIS.

SYLLABUS BY THE COURT

1.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words.

2.

The subject-matter requirements in a citizen-initiated grand jury petition are mandatory.

3.

Whether a citizen-initiated grand jury petition is legally sufficient is subject to de novo review.

4.

A citizen-initiated grand jury petition does not require specific factual allegations.

1

5.

Just as a complaint, indictment, or information in a criminal case shall be a plain and concise written statement of the essential facts constituting the crime charged and is sufficient if it incorporates the language of the statute, so too are citizen-initiated grand jury petitions.

6.

Although charging documents must show that the crime alleged occurred within the statute of limitations and must allege the precise time of the commission of an offense if time is an indispensable ingredient in the offense, the same is not true of the allegations in a citizen-initiated grand jury petition.

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed June 8, 2018. Reversed and remanded with directions.

*Steven Davis*, appellant pro se.

No appellee brief.

Before ARNOLD-BURGER, C.J., GREEN, J., and HEBERT, S.J.

ARNOLD-BURGER, C.J.:  It is solely the province of the Legislature to make, amend, or repeal laws. The role of the judiciary is to interpret and apply those laws in actual controversies. The wisdom of a statute is not the concern of the courts. See *INS v. Chadha*, 462 U.S. 919, 944, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983).

We are asked today to decide what is meant by the subject-matter requirement in our Kansas statutes that a citizen-initiated grand jury petition set out "sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment." K.S.A. 2017 Supp. 22-3001(c)(2). We are also

2

asked to apply that interpretation to the facts of this case. We are asked to do this because Steven Davis filed a petition to summon a grand jury alleging that Kansas Secretary of State Kris Kobach and others engaged in various election crimes. The district court dismissed his petition, holding that he failed to allege *specific* facts in his petition. Davis appealed. He asserts that in denying his petition the district court misinterpreted the statute in two key ways.

First, Davis argues that the subject-matter provision in K.S.A. 2017 Supp. 22-3001(c)(2) is directory rather than mandatory so he need not list specific allegations. In other words, when the statute uses the phrase "shall state" in referring to the contents of the petition it really means "may state." But, an analysis of the applicable caselaw leads us to conclude that the provision is mandatory. To be valid, a petition must comply with the subject-matter provision. So it must contain "sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment." K.S.A. 2017 Supp. 22-3001(c)(2).

Second, Davis argues that the district court misinterpreted the statute by requiring that his petition contain specific allegations of a crime, when only general allegations are required by the statute. His argument on this point is persuasive. The statute requires only general allegations, not specific allegations as the district court held. Moreover, because Davis' petition meets this standard, the district court erred in denying his request to summon a grand jury. As a result, we reverse and remand with directions.

FACTUAL AND PROCEDURAL HISTORY

In August 2017, Davis filed a petition to summon a grand jury under K.S.A. 2017 Supp. 22-3001(c). His petition stated:

3

"The grand jury shall investigate **Kansas Secretary of State Kris Kobach** and any of his subordinates, employees, and other affiliated persons carrying out duties related to the management of voter registration data for allegedly:

1. **Destroying, obstructing, or failing to deliver online voter registration applications in violation of K.S.A. 25-2421a,**
2. **Possessing falsely made or altered registration books in violation of K.S.A. 25-2420,**
3. **Preventing qualified electors from voting in violation of K.S.A. 25-2419, and**
4. **Being grossly neglectful with respect to their election duties in violation of K.S.A. 24-2419.**

"The grand jury may further inquire into other alleged violations of law, by these or other individuals, which arise as part of the same investigation."

The County Clerk of Douglas County certified that Davis' petition had enough signatures. Even so, the district court dismissed Davis' petition without prejudice, holding:

"Wherefore, the petition has been reviewed by a majority of the district judges of the Seventh Judicial District pursuant to K.S.A. 22-3001(c)(3) to determine if the petition is in proper form. And, being well and fully advised in the premises, this court finds that the petition is not in proper form, based on the following:

"1. K.S.A. 22-3001(c)(2) requires that a petition contain, among other things, 'sufficient general allegations to warrant a finding that such an inquiry may lead to information which, if true, would warrant a true bill of indictment.'

"2. *While the other requirements of K.S.A. 22-3001(c)(2) have been met*, the petition contained no allegations of specific facts that would warrant a finding that the inquiry might lead to information which, if true, would warrant a true bill of indictment." (Emphasis added.)

Davis appealed. Davis gave notice to the Kansas Attorney General of the appeal, although there does not seem to be any requirement in the statute that the State or district

4

attorney receive notice or respond. The Attorney General did not seek to intervene in the case. As a result, there is no appellee brief for consideration.

ANALYSIS

*We examine the history of the grand jury process.*

To understand the grand jury process and the issues that this case raises we believe it is helpful to briefly examine the history of the grand jury system in this country and this state.

The grand jury system predates our United States Constitution and has its roots in England. *Costello v. United States*, 350 U.S. 359, 362, 76 S. Ct. 406, 100 L. Ed. 397 (1956) ("The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders."). "Since colonial times, the grand jury has served two functions:  as a 'shield' between the government and the accused, and as a 'sword' probing into the evidence of a crime." *State v. Richards*, 464 N.W.2d 540, 541 (Minn. Ct. App. 1990). But "[w]here the king's grand juries had once colluded with the king's prosecutors, in pre-Revolutionary America, colonial grand juries resisted the king's representatives in America." *United States v. Navarro-Vargas*, 408 F.3d 1184, 1192 (9th Cir. 2005).

Grand juries during colonial times exercised broad powers. "'Through presentments and other customary reports, the American grand jury in effect enjoyed a roving commission to ferret out official malfeasance or self-dealing of any sort and bring it to the attention of the public at large . . . .'" 408 F.3d at 1191.

The Founding Fathers deemed this power of the people to be so important that they carried the grand jury process over to our Constitution through the Bill of Rights.

5

The constitutional right to an indictment solely by a grand jury is contained in the Fifth Amendment to the United States Constitution ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."). Accordingly, with some exceptions, federal felony criminal charges must be brought by indictments from a grand jury, rather than the mere filing of a complaint or information by the prosecutor.

But states are not required by the United States Constitution to use the grand jury process for state crimes. *Hurtado v. California*, 110 U.S. 516, 538, 4 S. Ct. 111, 28 L. Ed. 232 (1884); *State v. Scott*, 286 Kan. 54, 101-02, 183 P.3d 801 (2008), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016); *State v. Marshall*, 50 Kan. App. 2d 838, 851-52, 334 P.3d 866 (2014). In fact, the process has come under increasing scrutiny since its initial adoption. Critics believe that the grand jury process has become little more than a rubber stamp for prosecutors who present evidence to the jurors in secret, in hearsay form, with no duty to present exculpatory evidence. Witnesses are denied their right to counsel. Many believe that the grand jury process is not transparent enough and does not comply with present day notions of due process and fairness. Based on similar concerns, England abandoned the grand jury system in 1933. See *Johnson v. Superior Court*, 15 Cal. 3d 248, 261, 124 Cal. Rptr. 32, 539 P.2d 792 (1975) (discussion of due process limitations of grand juries).

The United States Supreme Court has noted that "[a]s a necessary consequence of its investigatory function, the grand jury paints with a broad brush." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991).

> "'Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury "can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not."' It need not identify the offender it suspects, or even 'the precise nature of the offense' it is investigating. The grand jury requires no authorization from its constituting court to initiate an investigation, nor does the

prosecutor require leave of court to seek a grand jury indictment. And in its day-to-day functioning, the grand jury generally operates without the interference of a presiding judge. It swears in its own witnesses, and deliberates in total secrecy. [Citations omitted.]" *United States v. Williams*, 504 U.S. 36, 48, 112 S. Ct. 1735, 118 L. Ed. 2d 352 (1992).

Accordingly, some states have abolished the use of grand juries and initiate criminal charges solely based on a prosecutor's information or complaint with a preliminary hearing—and its attendant due process guarantees—to determine whether probable cause exists to proceed to trial on the charges. See *State v. Mitchell*, 200 Conn. 323, 326-30, 512 A.2d 140 (1986) (explaining reasons Connecticut voters abolished the grand jury system in 1983); *Commonwealth v. Brown*, 247 Pa. Super. 401, 405, 372 A.2d 887 (1977) (explaining abolition of indictment by grand jury in Pennsylvania beginning in 1976). Other states have provided for a dual system allowing prosecutions to begin either by a grand jury indictment or a prosecutor-initiated information or complaint. See Haw. Const. art. I, § 11 and Haw. Rev. Stat. § 805-1 (dual system); Neb. Rev. Stat. §§ 29-1401, 29-1601 (dual system). Some states have specifically addressed due process concerns by inserting due process protections much like what a defendant would receive at a preliminary hearing. See K.S.A. 2017 Supp. 22-3009 (requiring witnesses receive notice of their right to consult counsel and have counsel present during grand jury questioning); Okla. Stat. tit. 22, § 335 (requiring that defendant have an opportunity to testify before the grand jury). Still other states have retained only investigatory grand juries, often comprised solely of a judge or panel of judges. See Conn. Gen. Stat. § 54-47b (investigatory grand jury made up of judge, referee, or panel of three judges); Wash. Rev. Code § 10.27.170 (special inquiry judge when public corruption or sexual exploitation of a child alleged).

Finally, a few states, including Kansas, have expanded, rather than limited, grand jury review through what are generally called "citizen-initiated grand juries" and we will

turn to those next. See *State v. Turner*, 300 Kan. 662, 663-64, 333 P.3d 155 (2014) (referring to a citizen-initiated grand jury).

*We examine the citizen-initiated grand jury process in Kansas.*

Kansas is one of only six states that allows citizens of the state to initiate a grand jury investigation. See N.M. Const. art. II, § 14; Okla. Const. art. II, § 18; Neb. Rev. Stat. § 29-1401.02; Nev. Rev. Stat. § 6.132; N.D. Cent. Code § 29-10.1-02. The Kansas statute provides:

> "(c)(1) A grand jury shall be summoned in any county within 60 days after a petition praying therefor is presented to the district court, bearing the signatures of a number of electors equal to 100 plus 2% of the total number of votes cast for governor in the county in the last preceding election.
>
> "(2) The petition, upon its face, shall state the name, address and phone number of the person filing the petition, the subject matter of the prospective grand jury, a reasonably specific identification of areas to be inquired into and sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment.
>
> . . . .
>
> "[3][B](iii) The judge or judges of the district court of the county shall then consider the petition and, if it is found that the petition is in proper form and bears the signatures of the required number of electors, a grand jury shall be ordered to be summoned. If a grand jury is not summoned because of a finding that the petition, substantially in the form required by this subsection on its face, is not in proper form, the person who filed the petition and whose name, address and phone number appear on the face of each petition shall have the right to appeal the decision to not summon a grand jury as a final judgment pursuant to K.S.A. 22-3601, and amendments thereto." K.S.A. 2017 Supp. 22-3001.

Kansas has had the citizen-initiated grand jury system in place since 1887. At that time, the law required 200 signatures of "tax-payers of the county" to initiate the process

8

and contained no subject matter requirements. L. 1887, ch. 167, § 1. Citizenship was not a prerequisite, merely taxpayer status. Kansas allowed initiation of a criminal proceeding by either a grand jury indictment or the filing of a prosecutor-initiated information. 1868 G.S., ch. 82, § 66. But until the 1887 changes, only the court could summon a grand jury. 1868 G.S., ch. 82, § 73.

We were unable to locate any state legislative history to enlighten us about why it was necessary over 20 years after statehood to allow citizens, rather than simply the court, to summon a grand jury. But newspapers at the time often summarized the debate on pending legislation, and it appears that the advent of the temperance movement and the failure of local officials to prosecute saloon owners prompted prohibitionists to push for a citizen-initiated process. The Topeka Daily Capital reported on the debate in the Kansas House of Representatives over the "grand jury bill." It reported that Representative Haun of Hodgeman

> "spoke of the time when A.B. Jetmore went to Dodge City to deliver a prohibition lecture. He saw innocent men knocked down because they dared to speak for the prohibitory law; the deputy marshal, the county attorney, the sheriff and the other county officers stood by and saw this done, and only smiled. They couldn't tell him that a grand jury bill was not necessary in such counties." The Topeka Daily Capital, February 27, 1887, p. 8.

In 1889, upon the introduction of a bill to abolish several provisions of the 1887 law, senators noted how effective it had been since its adoption. From The Topeka Capital-Commonwealth:

> "Senator Mechem spoke against the bill. He considered the grand jury one of the greatest safeguards of the law. The grand jury law of 1887 was passed for the purpose of enforcing the prohibitory law and it was effecting its object.
> . . . .

9

"Senator Tucker defended the grand jury. It had accomplished the destruction of liquor dealing and bootlegging in Nemaha.

"Senator Norton believed that the grand jury had done a noble work in Cherokee county. It had enforced the prohibitory law, which for several years had been a dead letter. As soon as the first grand jury met, every whisky joint, about seventy-five in the county, and every drug store selling without a license had disappeared." The Topeka Capital-Commonwealth, February 12, 1889, p. 3.

Others urged that the system was outdated and rarely returned any indictments—all at great expense to the taxpayers of the counties.

"Senator Kelley of Crawford stated that his county found no use for grand juries.

"Senator Elliston said the prohibitory law is as well observed today in Atchison county as in any county in the state, but the grand jury had been of little or no use and of considerable expense.

. . . .

"Senator Moody considered the grand jury a useless and expensive relic of the past, outgrown in nearly all civilized countries. There has not been in Linn county a single conviction under this system. Yet it cost $1,200 in one year; $800 in one session.

. . . .

"Senator Bentley was in favor of the bill. The sentiment of Sedgwick county is that grand juries cost a good deal and amount to nothing." The Topeka Capital-Commonwealth, February 12, 1889, p. 3.

No changes were made to the law in 1889.

For the next 124 years, only a few minor changes were made in the grand jury process. Instead of requiring the signatures of 200 county taxpayers, citizen-initiated grand jury petitions had to bear the "signatures of a number of electors equal to 100 plus 2% of the total number of votes cast for governor in the county in the last preceding election." K.S.A. 22-3001(2). In addition, rather than a single judge, the statute required "[a] majority of the district judges in any judicial district may order a grand jury to be

10

summoned in any county in the district when it is determined to be in the public interest." K.S.A. 22-3001(1).

But beginning in 2011, the process began to experience almost yearly modifications. First, in 2011, the Legislature expanded the grand jury provisions to allow a third way to summon a grand jury. H.B. 2031 (later incorporated into S.B. 55) allowed the county attorney or the district attorney to petition the court to order a grand jury be summoned. L. 2011, ch. 100, § 8; K.S.A. 2011 Supp. 22-3001(b). The only substantive testimony presented to the Legislature about the amendment was from the families of two crime victims. Minutes, House Comm. on Judiciary, February 8, 2011 (H.B. 2031), attach. 6-9. They argued that the secretive grand jury process was preferable to a preliminary hearing because the horrific evidence of the crime would not be available for public viewing—which only increases the personal trauma to the family and the possibility of poisoning potential jury pools. The changes were adopted with no further testimony. K.S.A. 2011 Supp. 22-3001(b).

The changes at issue here were made in 2013, along with several others. For the first time the subject matter of the petition was addressed.

> "[c](2) The petition, upon its face, shall state the name, address and phone number of the person filing the petition, the subject matter of the prospective grand jury, a reasonably specific identification of areas to be inquired into and sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment." L. 2013, ch. 85, § 2.

Several people testified in support of the bill, including Secretary Kobach. Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182). The proponents of the bill were primarily concerned that the grand jury process had been improperly commandeered by prosecutors. Secretary Kobach explained the historical purpose of

11

grand juries:  a defense against unjust prosecution and an offensive tool against "royal officials who were breaking the law." Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 2. Secretary Kobach believed that H.B. 2182 would help Kansas' grand jury system remain consistent with its historical purpose. He argued that the bill would also allow grand juries to select special counsel or investigators, which would "free[] the grand jury from dependence upon a prosecutor who may for personal or political reasons be attempting to steer a grand jury improperly." Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 2. It would also "allow[] the person who filed the petition for the grand jury to be the first witness, thereby preventing a prosecutor from steering the grand jury away from its intended purpose." Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 2. And, he continued, it would "make[] it more difficult for a prosecutor to keep a grand jury from hearing evidence." Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 2. Other groups, like Kansans for Life and American Family Action, made similar arguments. See Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 3-7.

Patrick Vogelsberg, a representative from the Kansas County and District Attorneys Association, presented the only testimony in opposition to the bill. He opposed the bill out of concern that the bill would "allow special interest groups to micromanage and potentially politicize the grand jury process." Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 8. Although prophetic, that view did not win the day.

With this historical frame of reference, we are ready to proceed with the issues raised by Davis.

12

*Shall means shall.*

Davis' first assertion of error is that the district court misinterpreted the grand jury statute by finding that the subject-matter requirements in K.S.A. 2017 Supp. 22-3001(c)(2) are mandatory. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

The statute provides that "[a] grand jury shall be summoned in any county within 60 days after a petition praying therefor is presented to the district court," provided the petition bears the requisite number of signatures. K.S.A. 2017 Supp. 22-3001(c)(1). There is no dispute that Davis acquired the requisite number of signatures in his petition. Subsection (c)(2) of the statute provides that the petition "*shall* state . . . the subject matter of the prospective grand jury, a reasonably specific identification of areas to be inquired into and sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment." (Emphasis added.) K.S.A. 2017 Supp. 22-3001. Subsection (c)(3) imposes requirements on the petition's form. K.S.A. 2017 Supp. 22-3001. It also provides that "[t]he judge or judges of the district court of the county *shall* . . . consider the petition and, if it is found that the petition is in proper form and bears the signatures of the required number of electors, a grand jury *shall* be ordered to be summoned." (Emphasis added.) K.S.A. 2017 Supp. 22-3001(c)(3)(B)(iii).

Davis argues that subsection (c)(2) is directory, despite using the word "shall." In other words, we should read the word "shall" as meaning "may." As a result, it is of no import that he did not set forth the specific factual allegations that the district court found necessary. He cites *State v. Raschke*, 289 Kan. 911, 219 P.3d 481 (2009), in support of his argument. We agree that an examination of *Raschke* is essential to our analysis of the statute.

13

In *Raschke*, the Kansas Supreme Court set forth four factors "to be considered in determining whether the legislature's use of 'shall' makes a particular provision mandatory or directory." 289 Kan. at 921. These are "(1) legislative context and history; (2) substantive effect on a party's rights versus merely form or procedural effect; (3) the existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provision." 289 Kan. at 921. Generally, this court must first attempt to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). Where there is no ambiguity, the court need not resort to statutory construction. Yet where a statute's language or text is unclear or ambiguous, this court can use canons of construction or legislative history to construe legislative intent. 304 Kan. at 409. The Kansas Supreme Court has noted that it "has sometimes interpreted 'shall' to be directory. So its meaning is not necessarily plain. [Citations omitted.]" *State v. Holt*, 298 Kan. 469, 474, 313 P.3d 826 (2013). So it is appropriate to examine the *Raschke* factors.

The first *Raschke* factor looks at the legislative history and context of the statutory language. 289 Kan. at 921. As noted before, the subject-matter requirement in K.S.A. 2017 Supp. 22-3001(c)(2) was added by the Kansas Legislature in 2013. L. 2013, ch. 85, § 2. Prior to that, the only requirements for citizen-initiated grand jury petitions were that they contain the requisite number of signatures and that one of the signers of each paper containing voter signatures verified "upon oath . . . that such signer believes that the statements in the petition are true." K.S.A. 2012 Supp. 22-3001(c). But the statute did not specify which statements must be made in the petition. K.S.A. 2012 Supp. 22-3001.

The legislative history surrounding the adoption of H.B. 2164 (2013) (originally proposed as H.B. 2182) does not explain the meaning of the subject-matter requirement. As previously outlined, other revisions were discussed, but the subject-matter language was included without discussion. In this situation, it is best to assume that the Legislature knew what it meant when it used the unambiguous, mandatory word "shall" in the bill.

14

See *Walker v. Brizendine*, No. 114,776, 2016 WL 5012505, at *2 (Kan. App. 2016) (unpublished opinion) ("[W]e have not been directed to any legislative history or testimony addressing this specific provision. We thus proceed from the apparently unambiguous use of the word shall as requiring the district court to take a specific course of action.").

The subject-matter provision also appears elsewhere in the statute. Upon summoning a grand jury, the district court must provide instructions. K.S.A. 2017 Supp. 22-3001(c)(4). These instructions "shall include" but are not limited to:

> "(A) You have been impaneled as a grand jury pursuant to a citizens' petition filed in this court, signed by (insert number) qualified electors of this county, stating (insert the subject matter described in the petition, including a reasonably specific identification of the areas to be inquired into and the allegations sufficient to warrant a finding that the grand jury's inquiry may lead to information which, if true, would warrant a true bill of indictment). You are charged with making inquiry with regard to this subject matter and determining whether the facts support allegations warranting a true bill of indictment.

> "(B) The person filing the citizens' petition filed in this court must be the first witness you call for the purpose of presenting evidence and testimony as to the subject matter and allegations of the petition." K.S.A. 2017 Supp. 22-3001(c)(4).

The statute goes on to list other instructions not relevant to the issues on appeal. The repetition of the subject-matter requirement throughout the statute and the failure of any legislative history to suggest that it was intended to be directory supports a finding that its terms are mandatory.

The second *Raschke* factor examines whether the provision at issue has a substantive effect on a party's rights or whether it deals with form or procedural effect. 289 Kan. at 921. The third factor is "the existence or nonexistence of consequences for

15

noncompliance." 289 Kan. at 921. The analyses for these two factors are related, so we will examine them together.

Generally, "mandatory provisions deal with substance and directory provisions with form." 289 Kan. at 916. The Kansas Supreme Court has stated:

> "[I]t is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory." *City of Hutchinson v. Ryan*, 154 Kan. 751, Syl. ¶ 1, 121 P.2d 179 (1942).

Statutory provisions dealing with form or procedural effect may be considered mandatory if "accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated." *Shriver v. Board of County Commissioners*, 189 Kan. 548, 556, 370 P.2d 124 (1962). And a statute is likely mandatory if it contains "a provision for a penalty or other consequence of noncompliance." *Paul v. City of Manhattan*, 212 Kan. 381, Syl. ¶ 2, 511 P.2d 244 (1973).

It does not appear that the subject-matter provision in K.S.A. 2017 Supp. 22-3001(c)(2) confers a legal right on a party. This was also the case in *Ambrosier v. Brownback*, 304 Kan. 907, 375 P.3d 1007 (2016). There, the Kansas Supreme Court examined a provision in a statute which stated: "'Any appointment made by the governor . . . *shall* be made within 90 days following receipt of notice from the clerk of the supreme court.'" 304 Kan. at 911 (quoting K.S.A. 2015 Supp. 25-312a). The court found that the 90-day time limit was not "meant to confer a specific legal right on any one party. This factor tips the scale toward construction of the word 'shall' as directory rather than mandatory." 304 Kan. at 914.

That failure to adhere to the subject-matter requirement affects no party's legal rights suggests that the provision is merely procedural. While the general rule is that statutes dealing only with form or procedure are not mandatory, that is not the case here. The Legislature provided a penalty for failure to follow the form requirements in a citizen-initiated grand jury petition: dismissal of the petition. The statute states that "if it is found that the petition is *in proper form* and bears the signatures of the required number of electors, a grand jury shall be ordered to be summoned." (Emphasis added.) K.S.A. 2017 Supp. 22-3001(c)(3)(B)(iii). Thus, even if the subject-matter provisions are merely procedural, the presence of this statutory language shows that the Legislature intended the requirement to be mandatory.

In conclusion, if the subject-matter requirement is substantive, then the second *Raschke* factor supports a mandatory reading. If it is procedural, which it appears to be because failure to adhere to it affects no party's legal rights, the second *Raschke* factor still supports a mandatory reading because the Legislature made clear that the petition must adhere to form requirements before a grand jury is summoned. The inclusion of a penalty for failure to adhere to form requirements tilts the third *Raschke* factor toward a mandatory interpretation.

The final *Raschke* factor scrutinizes "the subject matter of the statutory provision." 289 Kan. at 921. Here, the statutory provision requires "a reasonably specific identification of areas to be inquired into and sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment." K.S.A. 2017 Supp. 22-3001(c)(2).

Davis argues that the purpose of the subject-matter provision is to benefit "citizens signing the petition, who want to know what the prospective grand jury will be investigating." Even so, there may be other purposes. One of the people who testified against revising K.S.A. 22-3001 to give citizens more control over the grand jury process

17

noted that "[g]rand juries are the most expensive and inefficient procedure in which to initiate a prosecution." Minutes, House Comm. on Judiciary, February 12, 2013 (H.B. 2182), attach. 8. It is possible that the Legislature intended the subject-matter provision to serve a gatekeeping function. That way, grand juries would only be called where the investigation into the allegations may lead to information which, if true, would lead to issuing a true bill of indictment.

The case *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 367 P.3d 282 (2016), is relevant to this analysis. There, the State brought an action to the Kansas Supreme Court asking it to declare a Wichita city ordinance null and void. The ordinance essentially decreased penalties for first-time marijuana possession offenses. The ordinance was proposed by a group called Marijuana Reform Initiative, and that group had filed a petition containing thousands of signatures with the Wichita city clerk proposing the change to the municipal code. When Wichita received notice that the petition contained the requisite number of signatures of qualified electors, the city submitted the issue to voters in a special election. A majority of Wichita's electorate approved the ballot.

One of the State's arguments was that the ordinance "was not adopted in accordance with the procedures set out in K.S.A. 12-3013(a)." 303 Kan. at 651. That statute stated that "a proposed ordinance may be submitted to the governing body of any city accompanied by a petition as provided by this section. . . . Such ordinance and petition shall be filed with the city clerk." K.S.A. 12-3013(a). The petition that was circulated among voters did not fully set forth the language of the proposed ordinance. Additionally, when the petition was filed with the city clerk it was not accompanied by a copy of the proposed ordinance. Wichita agreed that the failure to file a copy of the proposed ordinance with the city clerk violated the language of the statute. But it argued that the initiative's submission substantially complied with the law and that should have been enough.

18

The Supreme Court agreed with the State. It noted several places within the statute that "the legislature ha[d] expressly linked the petition to the proposed ordinance through some form of the word 'accompany.'" 303 Kan. at 662. The statute also provided that "'[i]f the petition accompanying the proposed ordinance is signed by the required number of electors qualified to sign,' the governing body shall either pass the ordinance or submit it to the electorate." 303 Kan. at 663-64 (quoting K.S.A. 20-3013[a]). The court found that it was important for the proposed ordinance to accompany the petition for one key reason.

"[T]he legislature intended that before the governing body is required to expend its time and resources on a proposed ordinance, the validity of the proponents' support for it must be established." 303 Kan. at 664. It noted that if the ordinance did not accompany the petition, the city clerk would certify the signatures "in a vacuum, *i.e.*, without reference to the specific ordinance they allegedly support." 303 Kan. at 664. Even though the petition had a summary of the proposed ordinance, the summary did not cover every aspect of the ordinance.

We find the Supreme Court's reasoning in *Schmidt* is applicable here. The subject-matter provision provides a way to ensure that the people signing the petition to summon a grand jury know what they are supporting. It also helps ensure that the petition will allege some claim which, if true, could lead to issuing a true indictment. That way courts and citizen jurors would not have to expend time and resources on an "arbitrary fishing expedition[]." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991).

*Summary*

Kansas appellate courts have never examined the particulars of the citizen-initiated grand jury statute. The *Raschke* analysis points toward a reading of the subject-matter

19

provisions of the statute as mandatory. The legislative history does not reveal that the provision is directory, suggesting that the Legislature intended the word "shall" to be mandatory. The fact that the subject-matter requirements are repeated in the grand jury instructions reinforces this interpretation. If the provision is substantive, then the second *Raschke* factor supports a mandatory reading. Even if the provision is procedural, the *Raschke* factors still support a mandatory reading because the statute does not allow a grand jury to be called unless the petition is in proper form. Davis' argument that the provision is directory is unpersuasive. We find it is mandatory.

*K.S.A. 2017 Supp. 22-3001(c)(2) does not require that the petition contain* specific facts *that would lead to information which would support an indictment.*

Davis argues that even if the provision is mandatory, the district court misinterpreted K.S.A. 2017 Supp. 22-3001(c)(2) in another key way. The district court found that Davis' petition met all the requirements of K.S.A. 2017 Supp. 22-3001(c)(2) except for one: "the petition contained no allegations of specific facts that would warrant a finding that the inquiry might lead to information which, if true, would warrant a true bill of indictment." Davis argues that the statute only requires him to include general allegations, not specific facts.

Again, we exercise unlimited review regarding the interpretation of a statute. *Neighbor*, 301 Kan. at 918. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery*, 304

Kan. at 409. So we must determine the meaning of "sufficient general allegations" using the plain language of the statute.

In ordinary usage, "general" is defined as "lacking in details; not specific" and "not precise; vague." Webster's New World College Dictionary 604 (5th ed. 2014). And, an "allegation" is "an assertion made without proof." Webster's New World College Dictionary 37 (5th ed. 2014). "Sufficient" is a synonym for "enough" and describes "neither more nor less in amount than is needed." Webster's New World College Dictionary 1449-50 (5th ed. 2014). With this in mind, we could restate the statutory provision as requiring "enough vague assertions made without proof to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment." This is decidedly different than allegations of "specific facts." "Specific" means "precise [or] definite." Webster's New World College Dictionary 1395 (5th ed. 2014).

The plain language of the statute does not support the district court's holding that Davis was required to make allegations of specific facts. Allowing the district court's interpretation to stand would impose additional requirements on citizens beyond what the Legislature intended. See *Alexander v. State Adjutant General's Office*, 18 Kan. App. 2d 649, 655, 858 P.2d 1222 (1993) ("[A] court cannot substitute its judgment for that of the legislature when construing a statute.").

*Davis' allegations are sufficient under the statute.*

So our final question is whether the petition alleges sufficient (or enough, neither more nor less than the amount needed) general allegations to warrant a finding that the inquiry "may lead to information which, if true, would warrant a true bill of indictment." K.S.A. 2017 Supp. 22-3001(c)(2). Because this case presents no factual dispute, this court is in no different position than the district court and is free to decide de novo

21

whether Davis' petition is sufficient under the statute. See *State v. Howard*, 305 Kan. 984, 989, 389 P.3d 1280 (2017) (when facts are not in dispute on a motion to suppress, the question presented on appeal is a legal one, so our review is de novo); *Cohen v. Battaglia*, 296 Kan. 542, 545, 293 P.3d 752 (2013) (granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review); *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 624, 205 P.3d 1265 (2009) (when facts are not in dispute, review of the granting of summary judgment is de novo).

In attempting to apply the language used in a statute to a particular set of facts, we often look for other statutes that use the same term to see if that enlightens us on its application. Unfortunately, we were not able to locate any other Kansas statute that contains the phrase "sufficient general allegations."

Next, as is often the case when we are facing a matter of first impression, we look for similar situations to provide guidance in applying the statutory language. In other words, what is the underlying purpose of the requirement in the statute and what other procedures has the Legislature adopted that have a similar purpose? Because charging documents serve a similar purpose of providing notice of the allegations, albeit to those who sign the petition rather than to a criminal defendant, we find it useful to examine the requirements of charging documents.

Criminal defendants have "a right under the Sixth Amendment to notice of the charge or charges pursued by the State." *State v. Dunn*, 304 Kan. 773, 814, 375 P.3d 332 (2016). As such, a charging document must provide adequate notice to inform the defendant of the alleged offense. 304 Kan. at 814. A prosecution can be initiated solely upon the filing of a complaint, indictment, or information. K.S.A. 22-3201(a). A complaint, indictment, or information "shall be a plain and concise written statement of the *essential facts* constituting the crime charged." (Emphasis added.) K.S.A. 22-3201(b).

A charging document is deemed to meet this standard if it is drawn in the language of the statute. K.S.A. 22-3201(b). For example, it is sufficient to charge a person with the crime of drunk driving by merely alleging that the person operated a motor vehicle while under the influence of alcohol to the extent that he or she could not safely operate the vehicle. This is mere parroting of the language of K.S.A. 2017 Supp. 8-1567. It is not required that the complaint list the behavior involved like swerving around traffic, stumbling out of the car, or failing sobriety tests. In other words, it is not necessary to list the evidence of the crime in a complaint or information. See *State v. Rodriguez*, 305 Kan. 1139, 1146, 390 P.3d 903 (2017) ("'If those factual allegations, proved beyond a reasonable doubt, would justify a verdict of guilty, then the charging document is statutorily sufficient.'").

The subject-matter provision of K.S.A. 2017 Supp. 22-3001(c)(2) likewise serves to provide notice to those who sign the petition of the allegations to be investigated by the grand jury. But, as already discussed, the grand jury statute uses even broader language. It does not require "essential facts"; it merely requires "sufficient general allegations." This is indeed a very broad brush. We find it impossible to conclude that the Legislature would require more from a grand jury petition than would be required for a prosecutor to present a case to a judge for preliminary hearing—the alternative process to a grand jury. So, we examine whether Davis' petition, at a minimum, is drawn in the language of the statute.

"All election law is created either by the constitution or by statute." *Lambeth v. Levens*, 237 Kan. 614, 618, 702 P.2d 320 (1985). The Kansas Constitution establishes the position of secretary of state and contains provisions regarding elections and voting. Kansas Constitution, Articles 1, 4, and 5. The duties and responsibility of the secretary are outlined by statute. K.S.A. 75-401 et seq. In addition, Kansas has a comprehensive scheme of election laws contained in Chapter 25 of the Kansas statutes. The chief state election official is the secretary of state. K.S.A. 25-2504. As part of that scheme, the

23

Legislature has established specific election crimes. K.S.A. 25-2407 et seq. Davis' petition alleges facts which closely track the language of three election crimes.

His first allegation states that the grand jury should investigate Secretary Kobach and those involved with voter registration for "[d]estroying, obstructing, or failing to deliver online voter registration applications in violation of K.S.A. 25-2421a." That statute defines voter registration suppression as knowingly destroying voter registration applications, obstructing the delivery of signed applications to the appropriate election officials, or failing to deliver the applications to the appropriate election officials. K.S.A. 2017 Supp. 25-2421a(a). Davis' allegations align with the language of the voter registration suppression statute, meaning that if the grand jury uncovers information suggesting the allegations are true they would warrant a true bill of indictment.

Davis' second allegation is that Secretary Kobach and others "[p]ossess[ed] falsely made or altered registration books in violation of K.S.A. 25-2420." K.S.A. 25-2420(c) defines election fraud as "while being charged with any election duty, and with intent to hinder, prevent or defeat a fair election: . . . (c) Possessing any falsely made, altered, forged or counterfeit poll books, registration books, party affiliation lists, election abstracts or returns or any other election papers." While Davis' petition does not specifically allege intent, it does make a general allegation that Secretary Kobach possessed election materials in a way that violates K.S.A. 25-2420(c). An inquiry into this allegation could lead to information that, if true, would warrant a true bill of indictment.

Davis' third and fourth allegations are that Secretary Kobach and others "[p]revent[ed] qualified electors from voting" and were "grossly neglectful with respect to their election duties in violation of K.S.A. 25-2419." K.S.A. 25-2419 defines misconduct of an election officer as: "[W]hile being charged with any election duty[,] . . . [b]eing grossly neglectful with respect thereto" and "[p]reventing a qualified elector

24

from voting." K.S.A. 25-2419(a), (e). Thus, if the grand jury uncovers information suggesting that Davis' allegations are true it could lead to a true bill of indictment for a violation of K.S.A. 25-2419.

While analogizing to charging documents is useful, we do not suggest that grand jury petitions must meet all the same requirements as charging documents. For example, charging documents must show that the crime alleged occurred within the statute of limitations and must allege the "precise time of the commission of an offense" if "time is an indispensable ingredient in the offense." K.S.A. 22-3201(b). Davis' petition does not include the dates of the offenses he alleges. Even so, for two reasons Davis' failure to allege dates is not fatal to his petition.

First, the grand jury petition and formal charging documents come at different stages of a criminal investigation. The grand jury is summoned to investigate possible crimes. See *In re Kline*, 298 Kan. 96, 184, 311 P.3d 321 (2013) ("[T]he grand jury's role is not to determine guilt or innocence, but to investigate and, if warranted, issue a true bill."). The fact that the citizen filing the petition need not have all the relevant facts is evident from the language of the citizens' grand jury petition statute. It states that the petition must contain "sufficient general allegations to warrant a finding that such inquiry *may lead to information* which, if true, would warrant a true bill of indictment." (Emphasis added.) K.S.A. 2017 Supp. 22-3001(c)(2). The text of the statute envisions that the grand jury will uncover information which may not be discernable when the petition is filed. Charging documents, on the other hand, are filed by the State and contain information which was gained with the benefit of State investigatory services that may be unavailable to the general citizenry. To insert this specificity requirement into the statute, when citizens may not have access to such information, would severely limit the purpose of a citizen-initiated grand jury.

25

The Supreme Court of Oklahoma recognized this problem in *State ex rel. Harris v. Harris*, 541 P.2d 171 (Okla. 1975). There, citizens filed a petition to summon a grand jury to investigate various public officials. The district court held that the petition was insufficient because it failed to specify what should be investigated. The Supreme Court of Oklahoma disagreed:

> "If we were to require that a grand jury petition must contain specific allegations of crime and offenses, then we would by judicial fiat severely limit the function of the grand jury system. It is common knowledge that the vast majority of signers to a grand jury petition have no concrete evidence of wrong doing, and to require each of them to have that knowledge would surely defeat the purpose and scope of the grand jury." 541 P.2d at 173.

The Oklahoma Legislature later imposed subject-matter requirements in citizen-initiated grand jury petitions identical to those in Kansas. Okla. Stat. tit. 38, § 101. But the Oklahoma Legislature did not require dates or specific allegations of fact. The New Mexico Supreme Court has also found citizen-initiated grand jury petitions to be sufficient that did not allege specific dates. See *Pino v. Rich*, 118 N.M. 426, 428, 882 P.2d 17 (1994); *Cook v. Smith*, 114 N.M. 41, 42, 46, 834 P.2d 418 (1992).

The testimony on the 2013 amendment to K.S.A. 22-3001 revealed that the Legislature wanted to give citizen-initiated grand juries broad investigative powers. For this court to hold that Davis' petition is insufficient for failing to state the dates of the alleged offenses would limit citizens' ability to file petitions, and therefore investigate malfeasance, contrary to the Legislature's intent.

Second, another distinction between citizen-initiated grand jury petitions and charging documents is the purpose each serves. A charging document must include a time frame to enable a defendant to prepare his or her defense. *Dunn*, 304 Kan. at 815 (noting that a charging document must "meet[] federal and state constitutional standards for due

26

process and notice, such that the defendant has an opportunity to meet and answer the State's evidence"). This is not the purpose of a grand jury petition, as there is no defense lodged against a grand jury inquiry. The petition must merely state general allegations which could potentially "lead to information which, if true, would warrant a true bill of indictment." K.S.A. 2017 Supp. 22-3001(c)(2).

If a grand jury does issue an indictment, then it would have to comply with the mandate of K.S.A. 22-3201, which requires the indictment to state that the crime charged occurred within the statute of limitations. However, the "general allegations" requirement of the citizen-initiated grand jury petition statute does not require a citizen to state the particular time in which the alleged crimes occurred.

Finally, the conclusion that Davis makes sufficient factual allegations is supported by caselaw from other states that have considered this issue. Two other states, Oklahoma and New Mexico, which allow citizen-initiated grand juries have a similar sufficiency requirement, and their courts have had opportunities to examine whether citizen-initiated petitions for grand juries satisfy the requirement.

The Oklahoma Constitution provides for citizen-initiated grand juries. Okla. Const. art. II, § 18. In 1989, the state Legislature added sufficiency requirements. Okla. Stat. tit. 38, § 101. Before gathering signatures for a petition to impanel a grand jury, Oklahomans must have the petition approved by the court. As in Kansas, the face of the petition must state "a reasonably specific identification of areas to be inquired into and sufficient general allegations to warrant a finding that such inquiry may lead to information which, if true, would warrant a true bill of indictment" in their petition. Okla. Stat. tit. 38, § 101. If an Oklahoma court determines that the face of the petition does not satisfy these requirements, the petitioners have two days to amend the petition. Okla. Stat. tit. 38, § 102. Upon gaining approval of the court, petitioners have 45 days to collect the requisite number of signatures. Okla. Stat. tit. 38, § 103. The petition amendment

27

procedure was examined in *Key v. Owens*, 935 P.2d 1189 (Okla. Civ. App. 1996). There, the petitioners filed an amended petition to summon a grand jury. The petition stated that the purpose of the grand jury was:

> "'1. To identify and indict persons who participated in the planning and/or carrying out of the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma County, State of Oklahoma on April 19, 1995 which resulted in the deaths of Robert Neal Chipman, Katherine Louise Cregan, Anita Christine Hightower, Raymond Lee Johnson, Kathryn Elizabeth Ridley, Trudy Jean Rigney, and Charlotte Andrea who were killed away from federal property and, therefore, are not included by federal law in any federal indictments under the murder and/or racketeering and/or conspiracy laws of the State of Oklahoma, under Oklahoma Statutes, Title 21 & 22; and, in addition, to investigate into any and all other matters called to the attention of the Grand Jury.

> "'2. To indict any person or persons who interfere with or provide false information to the Grand Jury in violation of Oklahoma Statutes, Title 21, sections 421, 451, 452, 453, 454, 455, 456, 540, 543, 544, 545, 546.'" 935 P.2d at 1190-91.

The district court quashed the petition for insufficiently stating "a reasonably specific identification of areas to be inquired into and general allegations warranting an indictment." 935 P.2d at 1191. The petitioners appealed.

The Oklahoma appellate court held that the petition was sufficient. It noted that the petitioners stated:

> "1) the subject matter—the bombing of the Murrah Building; 2) the area to be inquired into—the identification of people who planned and participated in carrying out the heinous act; and 3) general allegations that would lead to an indictment—the murders of seven people for which no prosecution is currently pending." 935 P.2d at 1191.

28

The Oklahoma case demonstrates that making sufficient general allegations is a low threshold. Petitioners are not expected to lay out the specific facts of the crimes; rather, they can merely allege that a crime, such as murder, has occurred. Here, Davis has also made sufficient allegations under Kansas' statute. He has identified a subject matter—election duties. He has identified the areas to be inquired into—whether Secretary Kobach or others interfered with voter registration, prevented people from voting, or otherwise failed to carry out their statutory election duties. And, Davis has made general allegations which may lead to information which, if true, would warrant an indictment for violation of K.S.A. 2017 Supp. 25-2421a, K.S.A. 25-2420, and K.S.A. 25-2419.

New Mexico courts have also investigated what allegations would be sufficient in a citizen-initiated grand jury petition. The New Mexico Constitution provides that "a grand jury shall be ordered to convene . . . upon the filing of a petition therefor signed by not less than the greater of two hundred registered voters or two percent of the registered voters of the county . . . ." N.M. Const. art. II, § 14. Unlike in Kansas and Oklahoma, there is no statutory requirement that the petition contain sufficient general allegations which may lead to information which, if true, would warrant a true bill of indictment. Even so, the New Mexico Supreme Court has held that a petition must "on its face delimit an area of inquiry that colorably lies within the permissible scope of grand jury inquiry." *Cook*, 114 N.M. at 45. The petition need not "articulate specific allegations of crime." 114 N.M. at 45. This requirement stems from the fact that grand juries are permitted only to investigate claims which constitute public offenses—they cannot be "convened to engage in a fishing expedition." 114 N.M. at 45.

The New Mexico Supreme Court examined a citizen's petition for a grand jury in *Dist. Ct. of Second Jud. Dist. v. McKenna*, 118 N.M. 402, 409, 881 P.2d 1387 (1994), and found that it was insufficient. There, a petition alleged that several public officials, including judges, district attorneys, and others, had "'engaged in acts of misconduct or abuses of authority resulting in the perpetuation of child abuse, extortion, violations of

29

civil rights, and other wrongdoing or violations of law.'" 118 N.M. at 405. The court held that the face of the petition did not "allege[] sufficient facts to allow a grand jury to determine that the judges of the District Court may have committed some crime or some act of malfeasance." 118 N.M. at 408. Rather, it alleged that the public officials committed some unspecified acts which resulted in various wrongdoing.

Davis' petition does not suffer the same weaknesses as the petition in *McKenna*. His petition makes several allegations of acts which, if true, constitute crimes, such as "[d]estroying, obstructing, or failing to deliver online voter registration applications" or "[p]ossessing falsely made or altered registration books."

Applying the law to the facts of this case, we believe Davis' petition contains sufficient general allegations as contemplated by the subject-matter provision of K.S.A. 2017 Supp. 22-3001(c)(2).

*Conclusion*

"One can find no less than a dozen and a half published cases around the United States that repeat the maxim that a grand jury would indict a ham sandwich if asked to by a prosecutor." *McGill v. Superior Court*, 195 Cal. App. 4th 1454, 1498, 128 Cal. Rptr. 3d 120 (2011). It was apparently the opposite belief, that a prosecutor could just as easily thwart a grand jury process, that was the impetus for the changes that were made to the Kansas grand jury process in 2013. In issuing our decision today, we are mindful that the mere calling of a grand jury directed at the actions of a public official or a private individual without probable cause to believe a crime has been committed and without the guiding hand of a professional prosecutor can have serious personal and professional consequences. But the Kansas Legislature has determined that it wants to provide for citizen-initiated grand juries and it wants them to have broad powers to investigate possible criminal activity. The wisdom of this law is not a concern of our court. Our role,

30

as set forth at the beginning of this opinion, is merely to interpret and apply the law as it exists.

The district court erred when it held that Davis was required to allege specific facts in his petition. The statute merely requires sufficient general allegations. Davis has met this standard. Accordingly, based on the plain and unambiguous language of the statute, we must remand this case to the district court to summon a grand jury. In doing so, we make no judgment regarding the validity of the claims made by Davis. Whether Davis' allegations are meritorious is a matter for the citizen-initiated grand jury to investigate and determine.

Reversed and remanded with directions.